SIGAL CHATTAH, ESQ.
Nevada Bar No.: 8264
CHATTAH LAW GROUP
5875 S. Rainbow Blvd. #205
Las Vegas, Nevada 89118
Tel: (702) 360-6200
Fax: (702) 643-6292
Chattahlaw@gmail.com

JASON C. GREAVES, ESQ. (*pro hac vice*)
JARED J. ROBERTS, ESQ. (*pro hac vice*)
Binnall Law Group, PLLC
717 King Street, Suite 200
Alexandria, Virginia 22314
Tel: (703) 888-1943
Fax: (703) 888-1930
jason@binnall.com
jared@binnall.com

*Attorneys for Plaintiffs*

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEVADA

| | |
|---|---|
| KASHYAP P. PATEL *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> JIM STEWARTSON, <br><br> Defendant. | Case No.: **2:23-cv-873-APG-NJK** <br><br> **PLAINTIFFS' MOTION FOR DEFAULT JUDGMENT** <br><br> **[NO HEARING REQUESTED]** |

COME NOW, Plaintiffs, KASHYAP PATEL ET AL, by and through the undersigned

Counsel of Record, submits the foregoing MOTION FOR DEFAULT JUDGMENT under

Federal Rule of Civil Procedure 55(b)(2).

**INTRODUCTION**

This action arises out various systematic defamatory statements made by Defendant resulting in a Complaint on file herein. Plaintiffs' Complaint provides the following claims for relief: 1) Defamation and Defamation Per Se; 2) Injurious Falsehood; and 3) Business Disparagement. Despite after exhaustive attempts and willful evasion of service of process, Defendant was served and failed to file any responsive pleading. This Motion for Default Judgment is submitted as delineated *infra*.

**MEMORANDUM OF POINTS AND AUTHORITIES**

Despite his frequent postings about this case on social media, Defendant, Jim Stewartson, has cavalierly ignored his responsibility to file any response in this case. Defendant is clearly aware of the proceedings in this matter; however, he has ignored his responsibilities, hoping that this case would merely go away, and he would not be held to account for his insidious lies about Plaintiffs, Kashyap Patel ("Director Patel") and Kash Foundation, Inc. (the "Foundation").

Default has been entered against Defendant already. Defendant was properly served and has had over a year to establish any good cause of excusable neglect for failing to respond to this case. Rather than doing so, however, Defendant has chosen to continuously mock Plaintiffs on social media, seemingly boasting that he will not be held to account. The Court should reject Defendant's attempts to shirk responsibility. As Chief Justice Warren observed, "[f]reedom of the press under the First Amendment does not include absolute licenses to destroy lives or careers." *Curtis Pub. Co. v. Butts*, 388 U.S. 130, 170 (1967) (Warren, C.J., concurring). Defendant defamed and damaged Plaintiffs, as has been properly alleged as such. Accordingly, under the law Plaintiffs are entitled to default judgment, and Plaintiffs respectfully request this Court to grant their motion for default judgment.

**BACKGROUND**

Director Patel is the current Director of the FBI (Federal Bureau of Investigation). Prior to this, he served as Chief of Staff to Acting Secretary of Defense Christopher Miller at the Department of Defense. Compl. at ¶ 14. Before that, he served as Deputy Assistant to the President and Senior Director for Counterterrorism on the National Security Council, as Principal Deputy to the Acting Director of National Intelligence, the National Security Advisor and Senior Counsel for the House Permanent Select Committee, and a national security prosecutor at the Department of Justice. *Id.* at ¶¶ 15-18. Director Patel began his career in 2005 as a public defender. *Id.* at ¶ 19.

After Director Patel's term as Chief of Staff to Acting Secretary of Defense Christopher Miller ended, he founded Fight With Kash, a legal offense trust designed to give those who have been defamed by the media a voice by paying for their legal representation. *Id.* at ¶ 20. He also founded the Foundation and is its President and public face. *Id.* at ¶ 21.

The Foundation's mission is to support educational and legal efforts needed to facilitate government transparency with the goal of creating a healthier relationship between the US federal government and American citizens. *Id.*

The Foundation also raises money for education programs, tuition assistance, and financial assistance for our active-duty military and veterans. The Foundation provides financial assistance to those in need of legal counsel for legal disputes that are central to the Foundation's mission. *Id.*

Defendant has a long career in media and technology. *Id.* at ¶ 22. In an attempt to stay relevant, Defendant began defaming prominent public figures, included Director Patel. *Id.* at

¶ 24. Through podcasts and social media, Defendant has raised money off his defamatory statements about Plaintiffs. *Id*. at ¶¶ 26-30.

Since at least June 7, 2021, Defendant has been defaming Plaintiffs online. Defendant has stated, in no uncertain terms, that Director Patel "attempted to overthrow the government"; Director Patel "planned the takedown of the defenses at the Capitol on 1/6"; Director Patel is "guilty of sedition"; Director Patel is a "Kremlin asset"; and Director Patel and the Foundation paid people to "lie to congress." *Id*. at ¶ 31. Each of these statements are categorically false. *Id*. at ¶ 60.

Accordingly, on June 5, 2023, Plaintiffs brought this case against Defendant. The very next day, on June 6, 2023, Defendant took to social media, seemingly excited that Director Patel is suing him. Despite this, Defendant dodged service for months, requiring Plaintiffs to file a motion on September 28, 2023, to extend the time to complete service. Dkt. No. 17.

This Court extended the time to complete service to December 27, 2023. Dkt. No. 18. On October 30, 2023, Plaintiffs completed service on Defendant. Dkt. No. 19. Defendant has never responded to this case, despite posting about the case numerous times on social media. *See* Exhibit A.

On December 22, 2023, the Clerk made an entry of default against Defendant. Over a year later, Defendant has still not responded, yet continues to post about this case. Accordingly, Plaintiffs now bring this motion for default judgment.

///

///

///

**LEGAL STANDARD**

As an initial matter, "Federal Rule of Civil Procedure 55(b)(2) permits a court, following default by a defendant, to enter default judgment in a case." *Lopez v. Central Billing Manager, LLC*, No. 2:20-cv-01007, 2023 WL 8018289, at *1 (D. Nev. Nov. 17, 2023). "The choice whether to enter default judgment is entrusted to the discretion of the district court." *Serio v. Pregame LLC*, No. 2:21-cv-01940, 2023 WL 1073442, at *1 (D. Nev. Jan. 11, 2023) (citing *Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir. 1980)), report and recommendation adopted, No. 2:21-cv-01940, 2023 WL 1072093, at *1 (D. Nev. Jan. 26, 2023).

Courts are instructed to utilize the seven *Eitel* factors when making this determination:

(1) the possibility of prejudice to the plaintiff; (2) the merits of plaintiff's substantive claim; (3) the sufficiency of the complaint; (4) the sum of money at stake in the action; (5) the possibility of a dispute concerning material facts; (6) whether the default was due to excusable neglect; and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits.

*Id.* (citing *Eitel v. McCool*, 782 F.2d 1470, 1471-72 (9th Cir. 1986)).

Further, the Court must be satisfied that the plaintiff has satisfied the procedural requirements for default, that there was proper service, and that there is a sufficient basis for personal jurisdiction. *Id.* at *1 n.2 (citing *Tuli v. Republic of Iraq*, 172 F.3d 707, 712 (9th Cir. 1999)). And in this analysis, "the factual allegations of the complaint, except those relating to the amount of damages, will be taken as true." *Geddes v. United Fin. Grp.*, 559 F.2d 557, 560 (9th Cir. 1977).

**ARGUMENT**

**I.    THE *EITEL* FACTORS WEIGH IN PLAINTIFFS' FAVOR.**

Each of the seven *Eitel* factors weigh in Plaintiffs' favor, supporting default judgment. Should the Court require an evidentiary hearing as to the exact damages amount, Plaintiffs

would welcome the opportunity. In support of Plaintiffs' damages award, Plaintiffs have

retained an expert in defamation damages and online reputation repair, who estimates

reputational and rehabilitation damages over $1 million ($1,000,000.00).

### a. Plaintiffs will be prejudiced without entry of default judgment.

Defendant has "not made an appearance, or answered or otherwise responded to the

Complaint." *Firebaugh v. United States*, No. 3:12–cv–00242, 2015 WL 5165855, at *3 (D.

Nev. Sept. 3, 2015). Therefore, "[i]f Plaintiff's Motion is not granted, then it is unlikely that

Plaintiff will have another means for recovery." *Id*. Accordingly, "[t]his factor weighs in favor

of default judgment." *Id*.

### b. Plaintiffs have a claim for all three counts, and they are properly pled.

The second and third factors are often considered together. As such, Plaintiffs will do

the same here. Plaintiffs have brought three counts, all of which have merit and are sufficiently

pled "pursuant to the 'liberal pleading standards embodied in Rule 8.'" *Firebaugh*, 2015 WL

5165855, at *6 (quoting *Danning v. Lavine*, 572 F.2d. 1386, 1389 (9th Cir. 1978)).

### 1. Defamation and Defamation Per Se.

Defamation has four elements: "(1) a false and defamatory statement by the defendant

concerning the plaintiff; (2) an unprivileged publication to a third person; (3) fault, amounting

to at least negligence; and (4) actual or presumed damages." *Pacquiao v. Mayweather*, 803 F.

Supp. 2d 1208, 1211 (D. Nev. 2011) (citing *Wynn v. Smith*, 117 Nev. 6, 10 (2001)).

If a statement is defamatory per se, then damages are presumed. *Chowdhry v. NLVH,

Inc.*, 109 Nev. 478, 483-84 (1993).

First, because Defendant is in default, Plaintiffs' allegations that Defendant's statements

were false is accepted as true. Compl. at ¶ 60; *Geddes*, 559 F.2d at 560. Further, because

Defendant's statements can be proven false, the statements are not protected opinion, either. *See Unelko Corp. v. Rooney*, 912 F.2d 1049, 1053 (9th Cir. 1990) (Opinions are statements that "do not imply facts capable of being proved true or false.").

The statements at issue are that Director Patel (1) "attempted to overthrow the government"; (2) "planned 1/6"; (3) is "guilty of sedition"; (4) is a "Kremlin asset"; and (5) paid people to "lie to congress." Compl. at ¶ 59. Each of these statements are provably false and are defamatory. Under binding precedent, none of these statements can be considered opinion.

There is no "additional separate constitutional privilege for opinion." *Unelko Corp. v. Rooney*, 912 F.2d 1049, 1053 (9th Cir. 1990) (quoting *Milkovich v. Lorain Journal Co.*, 497 U.S. 1, 18 (1990)). Therefore, the threshold question in defamation cases is "whether a reasonable factfinder could conclude that the statement 'impl[ies] an assertion of objective fact.'" *Id*.

In *Rooney*, the defendant, discussing the plaintiff's product, stated, it "didn't work." *Id*. The Ninth Circuit established a three-part test: (1) whether the defendant used "figurative or hyperbolic language" that negates a factual impression; (2) whether the general tenor of the defendant's work negates a factual impression; and (3) whether the statement is "is susceptible of being proved true or false." *Id*.

First, the statement was "not couched in loose, figurative, or hyperbolic language." *Id*. at 1054. Instead, the statement gave the impression that the product "failed to perform as guaranteed." *Id*.

Second, while the statement was part of a "humorous" segment, that did not negate the impression of a factual assertion. *Id*., the statement "implied an assertion of objective fact." *Id*. at 1055. Accordingly, the Ninth Circuit found the statement to be actionable. *Id*.

The Ninth Circuit built on this opinion in *Flowers v. Carville*, noting that while statements that something is "trash," "crap," and "garbage" is rhetorical hyperbole, a statement that something was "doctored" is in a different category. 310 F.3d 1118, 1127 (9th Cir. 2002). If the statement implies an assertion that something did, in fact, occur, then it is actionable. *Id*. Accusing a person of "specific and objectively verifiable acts" gives "rise to an action for slander." *Rodriguez v. Panayiotou*, 314 F.3d 979, 987–88 (9th Cir. 2002).

Likewise, here, Defendant's statements cannot be construed as opinion. First, Defendant did not use any "figurative or hyperbolic language."

Instead, Defendant's statements give a clear and reasonable impression of an assertion of fact. Second, the tenor of Defendant's work does not negate the impression of an assertion of fact. Instead, Defendant describes himself as a journalist.[1]

As a journalist, Defendant's job is presumably to report on the news, and people go to Defendant for such news. Thus, the tenor of Defendant's work increases the probability that a reasonable person would view Defendant's statements as assertions of fact.

Third, each of Defendant's statements can be proven false. Accordingly, Defendant's statements are actionable. Even if the Court were to consider any of Defendant's statements to be opinion, they are still defamatory because they imply the existence of undisclosed defamatory facts. *See Pacquiao*, 803 F. Supp. 2d at 1212 (quoting Restatement (Second) Torts, § 556); *Goldberg v. TeachBK, Inc.*, No. 24-cv-04525, 2025 WL 296143, at *8 (N.D. Cal. Jan. 24, 2025).

Second, Defendant's statements are not privileged in any way. Defendant made the statements on his personal social media accounts to the general public.

---

[1] *See* Jim Stewartson (@jimstewartson), X (Dec. 2, 2024), https://x.com/jimstewartson/status/1863574232426516785 (Defendant stating that he is the only journalist that Director Patel has sued).

Third, as alleged, Defendant acted with actual malice. Compl. at ¶ 64. "Actual malice is defined as knowledge of the falsity of a statement or a reckless disregard for its truth." *Posadas v. City of Reno*, 109 Nev. 448, 454 (1993) (citing *Nevada Ind. Broadcasting v. Allen*, 99 Nev. 404, 414 (1983)). A statement is reckless if there is "a high degree of awareness of the probable falsity of a statement." *Id*.

As the Supreme Court noted, "[p]rofessions of good faith will be unlikely to prove persuasive, for example where a story is fabricated by the defendant [or] is the product of his imagination." *St. Amant v. Thompson*, 390 U.S. 727, 732 (1968). The Seventh Circuit built on this holding in *Carson v. Allied News Co.*, 529 F.2d 206 (7th Cir. 1976).

In *Carson*, the Seventh Circuit noted that "*St. Amant* expressly gives as another example of reckless disregard for the truth any 'product of (one's) imagination.'" *Carson*, 529 F.2d at 213 (quoting *St. Amant*, 390 U.S. at 732). Therefore, "[t]he defendants in fabricating and imagining 'facts' necessarily entertained serious doubts as to the truth of the statements and had a high degree of awareness of their probable falsity." *Id. See also Henschel v. Carter*, 562 P.3d 1071 (Table), 2025 WL 325874, at *2 (Nev. Jan. 28, 2025) (finding that the defendant acted with actual malice wherein the defendant fabricated an event).

Similarly, here, there is simply no evidentiary support for Defendant's outrageous statements. Instead, they were a complete and utter fabrication and product of his imagination. Thus, Defendant "necessarily entertained serious doubts as to the truth of the statements." *Carson*, 529 F.2d at 213.

Furthermore, the Supreme Court has found that a plaintiff is entitled to prove a defendant's state of mind through circumstantial evidence, which is often the only way to prove malice in libel cases. *Harte-Hanks Commc'ns, Inc. v. Connaughton*, 491 U.S. 657, 668, 681–82,

683–84, (1989). And "[e]vidence of negligence, motive, and intent may cumulatively establish necessary recklessness to prove actual malice in a defamation action." *Posadas*, 109 Nev. at 454. In *Posadas*, the court generally found there to be actual malice wherein the defendant disliked the plaintiff and had intent to harm the plaintiff. *Id.*

Likewise, here, Plaintiffs provided an entire section in the Complaint illustrating Defendant's disdain for them and Defendant's motivation to defame them. Compl. at ¶¶ 47–57. Specifically, Defendant uses derogatory terms to describe Plaintiffs, and uses his defamatory statements to raise money. *Id.* at ¶¶ 48–51, 56. Defendant has this animus because of Director Patel's political beliefs. *Id.* at ¶ 52.

The cumulation of this evidence is sufficient to show actual malice. Minimally, Defendant acted recklessly in making these statements, which are highly improbable assertions of fact, but did so anyways because he was motivated from profit and hatred.

Fourth, because the statements are defamatory per se, damages are presumed. Each of the statements accuse Plaintiffs of committing crimes. As this district has found, "a false statement imputing criminal conduct to a person has historically been regarded as per se defamatory." *Ferm v. McCarty*, No. 2:12-cv-00782, 2013 WL 800536, at *8 (D. Nev. Jan. 28, 2013).

Here, Defendant accused Plaintiffs of committing serious crimes (committing treason and paying people to lie to Congress). Further, a statement is defamatory per se if it "imputes [the plaintiff's] lack of fitness for trade, business, or profession or tends to injure [the plaintiff] in [the plaintiff's] business." *Nigam v. Ahmad*, 561 P.3d 597 (Table), 2024 WL 5181837, at *7 (Nev. Ct. App. Dec. 19, 2024). The Foundation provides financial assistance to those in need of

legal counsel. Thus, Defendant's statement that Director Patel, the founder of the Foundation, pays people to lie to Congress, injures the foundation in its business.

Even if the statements were not defamatory per se, Plaintiffs' expert's report, as discussed below, demonstrates that Plaintiffs have suffered actual damages. Accordingly, Plaintiffs' defamation claim has merit and is sufficiently pled.

### 2. *Injurious Falsehood.*

As this claim is often merged with business disparagement, Plaintiffs address both claims in the following section. *See Clark County School Dist. v. Virtual Educ. Software, Inc.*, 125 Nev. 374, 385 (2009) ("Unlike defamation per se, communications constituting business disparagement are not directed at an individual's personal reputation; rather, they are injurious falsehoods that interfere with the plaintiff's business and are aimed at the business's goods or services." (citing *Aetna Cas. & Sur. Co. v. Centennial Ins. Co.*, 838 F.2d 346, 351 (9th Cir.1 988)).

The same analysis delineated supra supports this claim for relief and is asserted herein.

### 3. *Business Disparagement.*

Business disparagement has four elements: "(1) a false and disparaging statement, (2) the unprivileged publication by the defendant, (3) malice, and (4) special damages." *Clark County School Dist. v. Virtual Educ. Software, Inc.*, 125 Nev. 374, 386 (2009) (citing *Hurlbut v. Gulf Atlantic Life Ins. Co.*, 749 S.W.2d 762, 766 (Tex. 1987)). "[T]he principal differences between defamation per se and business disparagement concern the elements of intent and damages." *Id*. Therefore, because the first two elements of business disarmament are largely the same as those in defamation per se, these elements are likewise satisfied for this claim.

Plaintiffs further pled as such, pleading that Defendant's statements are "false and disparaging" and "are not protected by any privilege." Compl. at ¶¶ 77, 78.

As to malice, the Nevada Supreme Court has held:

> Malice is proven when the plaintiff can show either that the defendant published the disparaging statement with the intent to cause harm to the plaintiffs pecuniary interests, or the defendant published a disparaging remark knowing its falsity or with reckless disregard for its truth.

*Id*. at 504–05 (citing *Pegasus v. Reno Newspapers, Inc*., 118 Nev. 706, 722, 57 P.3d 82, 92–93 (2002); *Hurlbut*, 749 S.W.2d at 766; Restatement (Second) of Torts § 623A (1977)). As discussed above, Defendant knew his statements were false or acted with reckless disregard. *See also* Compl. at ¶ 81.

Further, Defendant's hatred for Plaintiffs demonstrates his intent to harm Plaintiffs' pecuniary interest. *See* Compl. at ¶¶ 47–57. This is especially true for Defendant's statement that Plaintiffs paid people to lie to Congress, which Defendant intended to impact the Foundation's relationship with donors and destroy its ability to perform charitable work by undermining its legitimacy. *Id*. at ¶¶ 76–79, 82.  Accordingly, this element is also satisfied.

Finally, Plaintiffs suffered special damages. Recently, this Court found the following to be sufficient in pleading special damages:

> Nakamura's false and disparaging statements caused Sunday Group to suffer general and special damages, including the money paid to buy-back Token Investors' M-Tokens, harm to reputation and good will, expenses incurred to manage with the disruption to the Mobby Project, as well as harm to Sunday Group's ability to attract additional investors or other opportunities to raise capital.

*Nakamura v. Sunday Grp. Inc.*, No. 2:22-cv-01324, 2024 WL 2959278, at *6 (D. Nev. Jun. 12, 2024).

Here, similarly, Defendant's statements have harmed the legitimacy of the Foundation, and Director Patel's work for the Foundation, causing the Foundation, to lose business opportunities and money spent defending its representation. Compl. at ¶¶ 80, 83. This will be further substantiated in Plaintiffs' forthcoming expert report, again, as discussed below. Accordingly, because Plaintiffs have satisfied each of the elements for business disparagement, default judgment is also appropriate on this count.

### c. Plaintiffs' damages amount is reasonable.

Under this factor, "the Court must consider the amount of money at stake in relation to the seriousness of Defendant's conduct." *Lopez*, 2023 WL 8018289, at *3 (quoting *Dr. JKL Ltd., v. HPC IT Educ. Ctr.*, 749 F. Supp. 2d 1038, 1050 (N.D. Cal. 2010)). In support of their claims for damages, Plaintiffs hired an expert, Sameer Somal. Mr. Somal calculated Plaintiffs' reputational harm to be between $1,500,000–$2,000,000, and rehabilitative damages between $810,000–$1,200,000. Exhibit B.

Starting with economic damages, Defendant's statements "have had a significant effect on Director Patel's organizations and professional standing in the industry." *Id*. at 36. Defendant has actively profited off his lies about Plaintiffs, while Plaintiffs, as a result, have suffered losses "in the form of lost donors, funds, and prospective losses when someone looking to donate or collaborate with the Foundation sees the narrative created by his statements." *Id*.

Defendant's statements removed a large potential donor base that would be unwilling to donate money to a charitable cause affiliated with such heinous conduct through Defendant's lies. *Id*. at 37. After Defendant's statements, Plaintiffs received multiple emails requesting the Foundation to remove them from its mailing list. *Id*. at 38. Furthermore, Defendant's statements

required Director Patel to "undertake efforts to restore his reputation, in real life with his connections, and online through reputation management." *Id*. at 36.

Next, regarding reputational damages, "[r]eputations are a business and individual's most valuable asset." *Id*. at 38. Defendant's lies have required Director Patel to clarify the statements with close friends and family, resulted in distrust from co-workers, clients, and donors, and resulted in a negative perception in the minds of nearly half the country, severely impeding the Foundation's ability to raise funds. *Id*. at 40–41. Indeed, tens of thousands of people viewed each of the subject statements. *Id*. at 11–12.

Director Patel was spending nearly $10,000.00 per month to defend his reputation. *Id*. Plaintiffs publicist even told Mr. Somal that since Defendant began spewing his lies, Director Patel has stopped being invited to certain television shows and interviews, which can raise nearly $20,000. per show. *Id*.

Turning to rehabilitation damages, first, businesses such as the Foundation are required to monitor for false claims, address such false claims, and "actively engage with the online community to counterbalance the negative narrative." *Id*. at 42. This process takes "considerable amount of time and effort." *Id*. Director Patel has been required to use substantial time and resources to rehabilitate his, and the Foundation's image. *Id*. This includes the need to hire public relations specialists. Defendant's lies have exacerbated this problem.

Finally, regarding damages for emotional distress, as Mr. Somal noted, each lie directly impacted Director Patel's morale. *Id*. at 45. Such lies have caused Director Patel stress and "stress related physical ailments." *Id*. This is especially true for Director Patel having to see his family read these disgusting lies, and when people call his family to inquire about the lies. *Id*.

Furthermore, while not discussed in Mr. Somal's report, Plaintiffs are also entitled to punitive damages. Defendant acted with actual malice and has engaged in a vicious cycle of defaming Plaintiffs, including to this day.

Rather than ask for the more than reasonable sum that Ms. Somal calculated, however, Plaintiffs merely ask for $500,000.00 here on default judgment. This is more than reasonable in internet defamation cases.

For example, in *Bouveng v. NYG Capital LLC*, involving internet defamation, the court upheld a jury verdict for compensatory damages in the amount of $1,500,000 for emotional and reputational harm. 175 F. Supp. 3d 280, 344 (S.D.N.Y. 2016). This was because of the defendants' "outrageously defamatory statements, which were deliberately disseminated in a fashion to cause maximum damage to Plaintiffs reputation." *Id*. The court also found $1,500,000 in punitive damages from each respective defendant to be appropriate. *Id*. at 351.

As discussed, Defendant's statements were outrageous, accusing Plaintiffs of heinous conduct. Defendant spread such lies on social media for all to see and continues to do so into present day. Even where the defamation was not "widespread," the District of Oregon in 1998 still found that an award of $475,000 was appropriate. *Bippes v. Hershey Chocolate U.S.A.*, 180 F.R.D. 386, 390 (D. Or. 1998).

Accordingly, Plaintiffs damages request of $500,000.00 is reasonable.

### d.  There is no dispute concerning the material facts.

"Upon entry of default, all well-pleaded facts in the complaint are taken as true, except those relating to damages." *Firebaugh*, 2015 WL 5165855, at *6 (quoting *PepsiCo, Inc. v. California Sec. Cans*, 238 F. Supp. 2d 1172, 1177 (C.D. Cal. 2002)). Accordingly, this Court is required to accept Plaintiffs' "well-pleaded factual allegations as true." *Id*.

Therefore, "[t]here is accordingly little possibility of dispute over the material facts, and this factor weighs in favor of default judgment." *Id*. This is especially true considering there is nothing in the record suggesting a dispute. *Lopez*, 2023 WL 8018289, at *3. Furthermore, the potential for a dispute is nonexistent given Defendant's choice to "forego the opportunity to dispute the facts." *Serio*, 2023 WL 1073442, at *1.

### e. The default was not due to excusable neglect.

As provided below, Defendant was properly served in this matter. Further, "a signed return of service constitutes prima facie evidence of valid service which can be overcome only by strong and convincing evidence." *S.E.C. v. Internet Sols. for Bus. Inc.*, 509 F.3d 1161, 1166 (9th Cir. 2007) (citations omitted). Additionally, "there is nothing in the record suggesting this failure is based on excusable neglect. *Lopez*, 2023 WL 8018289, at *3 (citing *Shanghai Automation Instrument Co., Ltd. v. Kuei*, 194 F. Supp. 2d 995, 1005 (N.D. Cal. 2001) (default after proper service was not excusable neglect)). Far from it, Defendant has posted about this lawsuit on his personal X account and is fundraising off the lawsuit. Exhibit A.

In light of Defendant's public mockery of this pending matter, Defendant cannot rely on excusable neglect, and this factor weighs in favor of default judgment.

### f. Public policy weighs in favor of default judgment.

While there is a preference for deciding cases on the merits, this preference "is not dispositive when standing alone." *Firebaugh*, 2015 WL 5165855, at *6 (citations omitted). Defendant's "failure to appear and to respond to the Complaint renders [a decision on the merits] 'impractical, if not impossible.'" *Id*. (quoting *PepsiCo, Inc.*, 238 F. Supp. 2d at 1177). Accordingly, this factor should not preclude default judgment. *Id*. In such situations, "[t]his final factor weighs in favor of granting the Motion." *Lopez*, 2023 WL 8018289, at *3.

## II. ALL OTHER FACTORS WEIGH IN FAVOR OF DEFAULT JUDGMENT.

### a. Default judgment is procedurally proper.

On December 22, 2023, the Clerk entered default against Defendant. Dkt. No. 21. Further, because Defendant has not "answered or otherwise responded to the Complaint, the notice requirement of Rule 55(b)(2) is not implicated." *Firebaugh*, 2015 WL 5165855, at *3. "Thus, there is no procedural impediment to entering a default judgment." *Id*.

### b. Plaintiffs properly served Defendant.

Nevada Rule of Civil Procedure 4.3(a)(1) permits service of individuals outside of Nevada "in the same manner as provided in Rule 4.2(a)." Pursuant to Rule 4.2(a), service may be made "by leaving a copy of the summons and complaint at the individual's dwelling or usual place of abode with a person of suitable age and discretion who currently resides therein and is not an adverse party to the individual being served." Nev. R. Civ. P. 4.2(a)(2).

As previously filed with this Court, this is the precise manner in which Plaintiffs served Defendant on October 7, 2023, leaving the service with an adult male who stated that he resides with Defendant. *See* Dkt. No. 19. Thus, service is not at issue.

### c. This Court has personal jurisdiction over Defendant.

Defendant is subject to personal jurisdiction in Nevada because of his minimum contacts with the forum state and Nevada's long-arm statute. Because Nevada's long-arm statue is "coextensive with federal due process requirements," the analysis under state law and federal law are the same. *See* NEV. REV. STAT. § 14.065; *Id*. (citing *Panavision Int'l, L.P. v. Toeppen*, 141 F.3d 1316, 1320 (9th Cir. 1998)).

The Ninth Circuit has held that the "minimum contacts" test is satisfied when a defendant (1) purposefully directed activities toward the forum, (2) the claim arises out of the

defendant's activities in the forum, and (3) the exercise of jurisdiction would be reasonable. *See Dole Food Co. v. Watts*, 303 F.3d 1104, 1111 (9th Cir. 2002) (citing *Caruth v. Int'l Psychoanalytical Ass'n*, 59 F.3d 126, 127 (9th Cir. 1995)).

Therefore, Plaintiffs meet the burden to satisfy personal jurisdiction over Defendant further explained *infra*.

### 1.    *Defendant purposefully directed his statements at Nevada.*

As the Ninth Circuit has held, "the purposeful direction or availment requirement for specific jurisdiction is analyzed in intentional tort cases under the 'effects test'" derived from *Calder v. Jones*. *Dole*, 303 F.3d at 1111 (citing *Calder v. Jones*, 465 U.S. 783 (1984)). This Circuit has interpreted the *Calder* test to require that the defendant must have "(1) committed an intentional act, (2) expressly aimed at the forum state, (3) causing harm that the defendant knows is likely to be suffered in the forum state." *Dole*, 303 F.3d at 1111.

First, Defendant committed intentional acts. The complaint contains instances of defamatory statements Defendant made from June 7, 2021, until at least May 18, 2023. Compl. ¶¶ 31–57.

Second and third, Defendant expressly aimed his conduct at Nevada, and knew the harm would be felt there.

In *Calder*, the Supreme Court found a defamatory article published *outside* of the forum state to be expressly aimed at the forum state because the story "concerned the California activities of a California resident" and "the brunt of the harm . . . was suffered in California." *Calder*, 465 U.S. at 788–89. Those same principles apply here.

It is public knowledge that Director Patel lived and worked in Nevada at the time. Further, the Foundation has its principal place of business in Nevada. Compl. at ¶ 9. Defendant

would certainly have been aware of this public information given his long-running campaign against Director Patel, his open-source intelligence gathering ("OSINT") on Director Patel, and the numerous conspiracy theories he constructs from this so-called OSINT.[2]

Further, Defendant intended that Plaintiffs suffer harm in Nevada through his repeated defamatory statements, and Plaintiffs did suffer harm. Compl. at ¶¶ 12, 46, 66, 67. *See also Panavision Int'l*, 141 F.3d at 1322 (finding the defendant aimed his statements at California and knew the harm would be felt there because the plaintiff had its principal place of business in California). Finally, residents of Nevada did view the defamatory statements. Compl. at ¶ 46.

### 2.    *This case arises from Defendant's Nevada activities.*

As illustrated above, Defendant's contacts with Nevada are "integral and essential parts" of the claim at bar. *Id.* at 1114. This case is based entirely on Defendant's statements that caused Plaintiffs' harm in Nevada. Therefore, said factor is satisfied.

### 3.    *Exercising jurisdiction would be reasonable.*

To be reasonable, jurisdiction must "fair play and substantial justice." *Caruth*, 59 F.3d at 128. In making this determination, this Circuit looks to seven factors: "(1) the extent of the defendants' purposeful interjection into the forum state's affairs; (2) the burden on the defendant of defending in the forum; (3) the extent of conflict with the sovereignty of the defendants' state; (4) the forum state's interest in adjudicating the dispute; (5) the most efficient

---

[2] *See, e.g.*, Jim Stewartson (@jimstewartson), X (Jan. 10, 2023), https://x.com/jimstewartson/status/1612993824795791361 (linking to a five-part series that he wrote with his partner, described as an "OSINT Ninja," about an alleged conspiracy to overturn democracy); *see also* Jim Stewartson, "The Insurrection was Plan B: Part IV," SUBSTACK (Jun. 5, 2022) (conducting his own OSINT-based journalism to spin a conspiracy theory about Director Patel conspiring with other associates of President Donald J. Trump to generate an insurrection to overthrow the government on January 6, 2021), *available at* https://www.mind-war.com/p/the-insurrection-was-plan-b-part-ace?s=w; *see also* Jim Stewartson, "The Insurrection was Plan B: Part V," SUBSTACK (Jul. 3, 2022) (same), *available at*  https://www.mind-war.com/p/chrismillerknew.

judicial resolution of the controversy; (6) the importance of the forum to the plaintiff's interest in convenient and effective relief; and (7) the existence of an alternative forum." *Id.* (quoting *Core–Vent Corp. v. Nobel Indus. AB*, 11 F.3d 1482, 1485, 1487-88 (9th Cir.1993)). Each of these factors weigh in Plaintiffs' favor.

First, Defendant purposefully injected himself in Nevada. This is illustrated above, discussing Defendant's purposeful availment. In *Panavision*, knowing where the harm would be felt was sufficient to satisfy this factor. *Panavision Int'l*, 141 F.3d at 1323). Here, Defendant made his statements knowing that Plaintiffs would be harmed in Nevada. Accordingly, this factor weighs in favor of the Plaintiffs.

Second, Defendant would face minimal burden. Defendant resides in neighboring California. And, as discussed, Defendant has been fundraising on his social media for this action. Thus, again, this factor weighs in favor of Plaintiffs.

Third, there is no conflict with the sovereignty of California. Each state is bound by the same Supreme Court precedent in analyzing Plaintiffs' claims under the First Amendment. Minimally, this factor is neutral.

Fourth, "[Nevada] has a strong interest in protecting its residents from torts that cause injury within the state, and in providing a forum for relief." *Brainerd v. Governors of the Univ. of Alberta*, 873 F.2d 1257, 1260 (9th Cir.1989). This factor weighs in favor of reasonableness.

Fifth, jurisdiction would be most efficient in Nevada. "In evaluating this factor, [courts look] primarily at where the witnesses and the evidence are likely to be located." *Menken v. Emm*, 503 F.3d 1050, 1060-61 (9th Cir. 2007) (quoting *CoreVent Corp.*, 11 F.3d at 1489). Given Defendants' default, it is accepted as true that Defendants' statements. Thus, all that is in contention would be Plaintiffs' damages. Any evidence concerning Plaintiffs' damages would

be located in Nevada, where Plaintiffs live and work. Accordingly, this factor weighs heavily in Plaintiffs' favor.

Sixth, jurisdiction in Nevada would afford Plaintiffs the most convenient and efficient way to obtain relief. Here, Defendant has not made any appearance in this action despite frequently posting about its existence on social media for the past year, even posting about it as recently as November 22, 2024.[3] Thus, it would be immensely unfair to require Plaintiffs to try to obtain relief elsewhere, when Defendant has willfully ignored taking any action in this case for over a year. Therefore, this factor weighs in Plaintiffs' favor.

Seventh, while California would be an alternate forum, Plaintiffs should not be forced to jump through additional hoops for a Defendant who has shown clear intent to obstruct this case. Again, Defendant was served over a year ago, and has frequently posted about this case, mocking Plaintiffs, ever since. Minimally, this factor is neutral.

Importantly, not all factors need to weigh in Plaintiffs' favor for this Court to find it is reasonable to find jurisdiction over Defendant. *See Panavision Int'l*, 141 F.3d at 1324. Here, where all factors either weigh in Plaintiffs' favor, or are neutral, personal jurisdiction would be more than reasonable. Accordingly, having satisfied their burden on the third prong of the minimum contacts inquiry, as well as all other prongs, Plaintiffs have demonstrated that this Court has personal jurisdiction over Defendant.

## **CONCLUSION**

Because all factors for default judgment weigh in Plaintiffs' favor, and there are no other hinderance to granting default judgment, Plaintiffs respectfully request this Court enter default

---

[3] Jim Stewartson (@jimstewartson), X (Nov. 22, 2024, at 6:41 P.M.), https://x.com/jimstewartson/status/1860106436661150193.

judgment against Defendant, Jim Stewartson. If this Court were to require an evidentiary hearing to further establish Plaintiffs' damages, Plaintiffs are prepared to do so.

Respectfully submitted this 16th day of March, 2025.

/s/ *Sigal Chattah*
Sigal Chattah,
NV Bar No. 8264
CHATTAH LAW GROUP
5875 S. Rainbow Blvd. #205
Las Vegas, Nevada 89118
Tel: (702) 360-6200
Fax: (702) 643-6292
Chattahlaw@gmail.com

Jason C. Greaves (*pro hac vice*)
Jared J. Roberts (*pro hac vice*)
BINNALL LAW GROUP, PLLC
717 King Street, Suite 200
Alexandria, Virginia 22314
Phone: (703) 888-1943
Fax: (703) 888-1930
Email: jason@binnall.com
        jared@binnall.com
*Counsel for Plaintiffs*

# Exhibit A

The following is a non-comprehensive list of Defendant, Jim Stewartson's, social media posts about this case:

 **Jim Stewartson, Antifascist** 🇺🇸🇺🇦💀✅
@jimstewartson

The Chief of Staff to Acting @SecDef Chris Miller on January 6th was Kash Patel — who was installed at the @DeptofDefense by Donald Trump after losing the 2020 election.

Kash Patel just joined his co-conspirator Ret. Lt. @GenFlynn in suing me — for $10,000,000. 🤷‍♂️🤡



 **Jim Stewartson, Antifascist** 🇺🇸🇺🇦💀✅ @jimstewartson · May 18, 2023
Replying to @jimstewartson
Here are Kash Patel, @DevinNunes, a Truth Social staffer. and the worst traitor in American history @GenFlynn at Flynn's christofascist Nuremberg rally last weekend taking a selfie before Eric Trump takes the stage. x.com/jimstewartson/...



3:19 PM · Jun 6, 2023 · **64.8K** Views

💬 31          ↻ 231          ♡ 399          🔖 10          ↑



**Jim Stewartson, Antifascist** 🇺🇸 🏴 ☠️ ✓
@jimstewartson

This is the attorney suing me for $10,000,000 for Kash Patel.

@Chattah4Nevada has "significant ties" to the attempt to overthrow the government, but is suing me for saying her client helped plan 1/6 as Chief of Staff at @DeptofDefense.

WEIRD. 🙄 x.com/marceelias/sta...

This post is unavailable.

5:32 PM · Jun 6, 2023 · **6,059** Views

💬 9          🔁 49          ❤️ 109          🔖 1          ⬆️



**Jim Stewartson, Antifascist** 🇺🇸 🇺🇦 ☠️ ✔
@jimstewartson

The Chief of Staff at the Pentagon on J6, Kash Patel, is suing me for calling him a 'chud.'

I stand by my reporting.



Acyn ✔ @Acyn · Jun 26, 2023

Patel: I think it has absolutely enormous impact on Ukraine that tilts in the favor of Russia.



WAGNER GROUP MERCENARIES ATTEMPT MILITARY COUP

9:19 AM · Jun 27, 2023 · **11.3K** Views

💬 17          ↻ 34          ♡ 156          🔖 1

 **Jim Stewartson, Antifascist** 🇺🇸 🇺🇦 🏴‍☠️ ✔
@jimstewartson

Hey @RichardGrenell is this you with Kash Patel, the chud who is suing me for $10 million dollars for calling him a "chud" because his handler Mike Flynn aka Q is super mad at me?



1:47 PM · Jul 26, 2023 · **3,229** Views



💬 5          ↻ 23          ♡ 77          🔖 1          ⬆



**Jim Stewartson, Antifascist** 🇺🇸🇺🇦☠️ ✓
@jimstewartson

ICYMI, both Mike Flynn & his mini-me Kash Patel are suing me for defamation. It is comically obvious lawfare—for example, Patel included me calling him a "chud" in his complaint.

Regardless, it's expensive & draining, as intended. If you'd like to help 👇



STOP MIKE FLYNN – A FIGHT FOR PRESS FREEDOM, organized by Heidi Cuda

From gofundme.com

12:11 PM · Jul 13, 2023 · **3,398** Views

💬 5          ↻ 21          ♡ 42          🔖 1          ⬆



**Jim Stewartson, Antifascist** 🇺🇸🟦💀✅
@jimstewartson

OMG, thank you @NicolleDWallace and @mccaffreyr3!

Both Kash Patel and @EzraACohen are @GenFlynn's operatives who ensured the Capitol would be undefended on J6.

Also, Kash Patel is suing me for $10 million dollars—as well as suing @DirectorWray.



Last edited 4:10 PM · Sep 21, 2023 · **8,209** Views

💬 6          ⟲ 107          ♡ 280          🔖 2          ⬆

 **Jim Stewartson, Antifascist** 🇺🇸🇺🇦☠️ ✔️
@jimstewartson

··· 

As far as I know, the @FBI Director nominee has only sued one journalist. Come and get me @Kash_Patel.



KASH PATEL: JAIL JOURNALISTS        📺MSNBC
                                     morning Joe

> 🧑 **Jim Stewartson, Antifascist** 🇺🇸🇺🇦☠️ ✔️ @jimstewartson · Nov 30
> BREAKING: J6 Planner, Flynn pal Kash Patel has been nominated to run FBI which would make him the first Director to have a dedicated Q drop and to sue a blogger for telling the truth about his criminal behavior.
>
> FML....
> Show more

8:21 AM · Dec 2, 2024 · **2,083** Views

💬 2          ⟲ 13          ♡ 42          🔖 2          ⬆️

**Jim Stewartson, Antifascist** 🇺🇸🇺🇦☠️ ✓
@jimstewartson

He's not a "troll" Adam.
He sued me, your constituent, for $10 million for calling him what he is, a TRAITOR.

He was #2 in the Pentagon on J6 and STOOD DOWN THE NG for Mike Flynn.

Stop pretending this is politics. Kash Patel will turn the @FBI into the FSB and persecute people.

> **Jim Stewartson, Antifascist** 🇺🇸🇺🇦☠️ ✓ @jimstewartson · Nov 30
> Since Kash Patel is nominated for @FBI, it's worth noting that he was #2 in the Pentagon on J6 to the patsy Trump installed as Acting @SecDef—Chris Miller.
>
> Patel lied his face off to the DOD IG, Congress & numerous federal judges to cover up his treason....
> Show more



8:28 PM · Dec 1, 2024 · **25.6K** Views

💬 66        ↻ 406        ♡ 968        🔖 28        ↑



**Jim Stewartson, Antifascist** 🇺🇸🇺🇦☠️ ✓
@jimstewartson

I am familiar with this tactic. Mike Flynn & his mini-me Kash Patel sued me to try to shut me up. Lauren and her colleagues are doing incredibly brave, important work which is why they're being targeted. Please support them.

Criminal psychopath Roger Stone should be in prison.

> 🔒 x.com
>
> ← **Post**
>
> **Roger Stone** ✓                    Subscribe  ···
> @RogerJStoneJr
>
> Incorrect as you are completely unfamiliar with the circumstances. I will sue Lauren and appeal  as many times as may be necessary. Get out your checkbook bitch.
>
> 7:39 AM · Jun 19, 2024 · **154.3K** Views
>
> 💬 494        ⟲ 44        ♡ 17        🔖 8        ⬆️

**Lauren Windsor** ✓ @lawindsor · Jun 19

Hi, friends! As they say where I grew up, a hit dog will holler... and Stone is certainly barking up a storm.

Please help support my work and our legal defense by making a donation to AFV today. You can do so here:...

Show more

1:54 PM · Jun 19, 2024 · **71.4K** Views

💬 45            ⟲ 958            ♡ 1.7K            🔖 27            ⬆️