1   MARGARET A. MCLETCHIE, Nevada Bar No. 10931
2   LEO S. WOLPERT, Nevada Bar No. 12658
    **MCLETCHIE LAW**
3   602 South Tenth Street
    Las Vegas, NV 89101
4   Telephone: (702) 728-5300; Fax: (702) 425-8220
    Email: maggie@nvlitigation.com
5   *Counsel for Defendant Jim Stewartson*

6
                    **UNITED STATES DISTRICT COURT**
7
                       **DISTRICT OF NEVADA**
8

9   KASHYAP P. PATEL, individually and on
    behalf of the KASH FOUNDATION, INC.,        **Case. No.: 2:23-cv-873-APG-NJK**
10  the KASH FOUNDATION, INC. an Idaho
    Corporation,                                **DEFENDANT JIM**
11                                              **STEWARTSON'S**
                          Plaintiffs,
12              vs.                             **FED. R. CIV. P. 12(B)(2) AND**
                                               **12(B)(5) MOTION TO DISMISS**
13  JIM STEWARTSON, an individual,             **FOR LACK OF PERSONAL**
                                               **JURISDICTION AND FAILURE TO**
14                        Defendant.           **SERVE PROCESS**

15
                                               **AND**
16
                                               **MOTION TO SET ASIDE**
17                                             **DEFAULT JUDGMENT**
18
19
20                                             **ORAL ARGUMENT REQUESTED**
21
22
            Defendant JIM STEWARTSON, an individual, by and through his counsel of
23
    record, hereby: (1) moves to dismiss pursuant to Fed. R. Civ. P. 12(b)(2) for lack of personal
24
    jurisdiction, and Fed. R. Civ. P. 12(b)(5) for insufficient service of process; and, (2) moves
25
    to set aside the default judgment (ECF No. 41) pursuant to Fed. R. Civ. P. 55(c) and Fed. R.
26
    Civ. P. 60(b)(1),(3),(4), and (6) on related and other grounds. This motion is supported by
27
28

MCLETCHIE LAW
ATTORNEYS AT LAW
602 SOUTH TENTH ST.
LAS VEGAS, NV 89101
(702) 728-5300 (T) / (702) 425-8220 (F)
WWW.NVLITIGATION.COM

the attached memorandum of points and authorities, all exhibits and declarations submitted therewith, and any oral argument that the Court may entertain at hearing.

DATED this 5th day of September, 2025.

/s/ Margaret A. McLetchie

Margaret A. McLetchie, Nevada Bar No. 10931
Leo S. Wolpert, Nevada Bar No. 12658
602 South Tenth Street
Las Vegas, NV 89101
Telephone: (702) 728-5300; Fax: (702) 425-8220
Email: maggie@nvlitigation.com
Counsel for Defendant Jim Stewartson

ii

MCLETCHIE LAW

ATTORNEYS AT LAW
602 SOUTH TENTH ST.
LAS VEGAS, NV 89101
(702) 728-5300 (T) / (702) 425-8220 (F)
WWW.NVLITIGATION.COM

1

<u>**MEMORANDUM OF POINTS AND AUTHORITIES**</u>

**I.    INTRODUCTION**

On June 5, 2023, Plaintiffs Kash Patel and his namesake corporation, Kash Foundation, Inc. (collectively, "Patel and the Foundation"), filed a complaint initiating this matter against Defendant Jim Stewartson. (ECF No. 1; refiled as ECF No. 8.) The gravamen of the complaint is that Mr. Stewartson made a series of derogatory remarks about Plaintiffs on various Internet sites between June 7, 2021, and May 18, 2023. (*See generally* ECF No. 8, pp. 7-16, ¶¶ 31 – 44.) While the Complaint is not crystal clear as to which Plaintiff is pursing which claim(s)[1], Patel and the Foundation each alleged three causes of action: Defamation (*id.*, pp. 19-21, ¶¶ 58 – 69); Injurious Falsehood (*id.*, p. 21, ¶¶ 70 – 74); and Business Disparagement on behalf of the foundation. (*Id.*, pp. 21-22, ¶¶ 75 – 83.)

Despite submitting an affidavit of service to the Court on October 30, 2023 (ECF No. 19), Plaintiffs never in fact served Mr. Stewartson in compliance with federal or California law. On December 22, 2023, Plaintiffs obtained an entry of default against Mr. Stewartson (ECF No. 21) and on August 8, 2025—after service of Plaintiffs' affidavit in support of default and Plaintiffs' motion for Default Judgment were likewise not effectuated upon Mr. Stewartson—a default judgment in the amount of $250,000.00 against Mr. Stewartson. (ECF No. 41.)

The default judgment against Mr. Stewartson must be set aside for several reasons, and this matter must also be dismissed under Fed. R. Civ. P. 12(b)(2) for lack of personal jurisdiction, and under Fed. R. Civ. P. 12(b)(5) for insufficient service of process.[2] First, Mr.

---

[1] For instance, it is unclear how Patel, an individual, has standing to sue for business disparagement.

[2] Mr. Stewartson reserves the right to challenge the Complaint under Fed. R. Civ. P. 12(b)(6) and other grounds and/or Nevada's anti-SLAPP statute, Nev. Rev. Stat. § 41.635 *et. seq.*, should this Court set aside the default judgment but retain personal jurisdiction over Mr. Stewartson. Furthermore, Mr. Stewartson reserves the rights to move to dismiss under Fed. R. Civ. P. 12(b)(1) and move to set aside the judgment under Fed. R. Civ. P. 60(b)(4), as the Court must dismiss the action if at any time the court determines that it lacks subject-matter jurisdiction. Fed. R. Civ. P. 12(h)(3).

Stewartson was never served despite Plaintiffs' claims to the contrary, which merits setting aside the judgment under Fed. R. Civ. P. 60(b)(3) and dismissal of this matter under Fed. R. Civ. P. 12(b)(5). Second, even if service was effectuated on Mr. Stewartson, Plaintiffs failed to demonstrate that this Court has personal jurisdiction over Mr. Stewartson, as they do not allege that he had sufficient minimal contacts with Nevada merely by communicating about an (alleged) Nevada citizen from Mr. Stewartson's home state of California. This renders the judgment void under Fed. R. Civ. P. 60(b)(4) and dismissal proper under Fed. R. Civ. P. 12(b)(2). Finally, setting aside the judgment is warranted under Fed. R. Civ. P. 60(b)(1) and 60(b)(6), as setting aside the default judgment would not prejudice Plaintiffs, would promote the significant interest of resolving issues on their merits, and would permit Mr. Stewartson to raise meritorious defenses to Plaintiffs' claims—all of which are essentially barred by the First Amendment's protections regarding speech on public figures and matters of public interest.

## II.    RELEVANT FACTS/ PROCEDURAL HISTORY

### A.    Facts Relating to Service

On September 12, 2023, the Court entered notice of intent to dismiss pursuant to Fed. R. Civ. P. 4(m). (ECF No. 16.) In response, Patel and the Foundation moved to extend the service deadline and for alternative service. (ECF No. 17.) The Court denied the request for alternative service, but granted Plaintiffs until December 27, 2023, to effectuate service. (ECF No. 18.)

On October 30, 2023[3], Patel and the Foundation then submitted an affidavit of service stating that, on October 7, 2023, service was effectuated upon Mr. Stewartson at his address "by serving John Doe, housemate of Jim Stewartson, a person of suitable age and

---

[3] Plaintiffs represented to the Court that, on June 19, 2023, Patel and the Foundation attempted to serve Mr. Stewartson at 1526 Steinhart Ave., Redondo Beach, CA 90278; the resident at that address stated that Mr. Stewartson had moved. (ECF No. 14.) Patel and the Foundation then attempted service at 1450 3rd St., Manhattan Beach, CA 90266 several times between July 15, 2023, and July 25, 2023; there was no answer and the property appeared vacant. (ECF No. 15.)

MCLETCHIE LAW
ATTORNEYS AT LAW
602 SOUTH TENTH ST.
LAS VEGAS, NV 89101
(702) 728-5300 (T) / (702) 425-8220 (F)
WWW.NVLITIGATION.COM

discretion, who stated that he/she resides therein with Jim Stewartson." (ECF No. 19.) This statement is false. Whoever "John Doe" was—assuming someone was actually served—it is false that he "resides therein with Jim Stewartson" because Mr. Stewartson does not have any male housemates, does not live with anyone other than his wife, and did not live with anyone other than his wife on the date service was allegedly effectuated. (Stewartson Decl., ¶¶ 3-4.)

**B.     Procedural History: Entries of Default and Default Judgment.**

On October 31, 2023, counsel for Plaintiffs submitted an Affidavit in Support of Default. (ECF No. 20.) Although that document claims that copies of it were "served upon the defendant by regular mail, postage prepaid" (*id.*, p. 2:16-17), the affidavit does not reflect the address to which it was mailed, nor did Mr. Stewartson ever receive a copy of the affidavit. (Stewartson Decl., ¶ 5.) On December 22, 2023, the Clerk entered default against Mr. Stewartson. (ECF No. 21.)

After Plaintiffs took no action to prosecute this matter for over fourteen months, on March 4, 2025, the Court issued Plaintiffs an order to show cause why the case should not be dismissed for failure to prosecute. (ECF No. 29.) On August 5, 2025, this Court then granted Plaintiffs' Motion for Entry of Default Judgment and entered judgment in the total amount of $250,000 against Mr. Stewartson. (ECF No. 41.) Despite "scant evidence of harm or damages to either plaintiff" (ECF No. 40, p. 1:19), the Court ultimately awarded $100,000 in both compensatory and punitive damages to Mr. Patel, as well as $25,000 in both compensatory and punitive damages to the Kash Foundation. (ECF No. 40, p. 4:11-16.)

**III.     LEGAL STANDARDS AND GOVERNING LAW**

**A.     Standard for Setting Aside Default Judgment.**

Fed. R. Civ. P. 55(c) provides that the Court may set aside a final default judgment under Fed. R. Civ. P. 60(b), which, in turn, provides that that, "[o]n motion and just terms, the court may relieve a party or its legal representative from a final judgment, order, or proceeding for the following reasons:"

(1) mistake, inadvertence, surprise, or excusable neglect;

…

MCLETCHIE LAW

ATTORNEYS AT LAW
602 SOUTH TENTH ST.
LAS VEGAS, NV 89101
(702) 728-5300 (T) / (702) 425-8220 (F)
WWW.NVLITIGATION.COM

3

(3) fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party;
(4) the judgment is void;
…; or
(6) any other reason that justifies relief.

Fed. R. Civ. P. 60(b). As a general matter, Rule 60(b) is "remedial in nature and ... must be liberally applied." *TCI Grp. Life Ins. Plan v. Knoebber*, 244 F.3d 691, 695-96 (9th Cir. 2001), *as amended on denial of reh'g and reh'g en banc* (May 9, 2001). "Put another way, where there has been no merits decision, appropriate exercise of district court discretion under Rule 60(b) requires that the finality interest should give way fairly readily, to further the competing interest in reaching the merits of a dispute." *Id.* (quoting *Falk v. Allen*, 739 F.2d 461, 463 (9th Cir.1984) (per curiam)); *see also* Fed. R. Civ. P. 1 (mandating that federal rules "be construed, administered, and employed by the court and the parties to secure the ***just***, speedy, and inexpensive determination of every action and proceeding") (emphasis added).

Fed. R. Civ. P. 60(b)(4) also mandates a judgment to be set aside if it is "void," an umbrella that encompasses grounds based on failure to serve and jurisdictional grounds. Bause service of process is the means by which a court obtains jurisdiction over a party, an entity "is not bound by a judgment in a litigation to which [it] has not been made a party by service of process." *Mason v. Genisco Technology Corp*., 960 F.2d 849, 851 (9th Cir. 1992). As the Ninth Circuit has explained:

> A final judgment is 'void' for purposes of Rule 60(b)(4) only if the court that considered it lacked jurisdiction, either as to the subject matter of the dispute or over the parties to be bound, or acted in a manner inconsistent with due process of law.

*United States v. Berke*, 170 F.3d 882, 883 (9th Cir. 1999). A void judgment must be set aside, but in considering whether other grounds support setting aside a default judgment, courts apply a good cause analysis based on the following three factors: "whether the defendant's culpable conduct led to the default; whether the defendant has a meritorious defense; and whether reopening the default judgment would prejudice the plaintiff." *TCI Grp. Life Ins. Plan v. Knoebber*, 244 F.3d 691, 695 (9th Cir. 2001), *as amended on denial of reh'g and*

1  *reh'g en banc* (May 9, 2001) (citing *Falk v. Allen*, 739 F.2d 461, 463 (9th Cir.1984) (per

2  curiam).[4]

3  **B.    Standard for Service of Process.**

4  Fed. R. Civ. P. 4(c) requires that "[a] summons must be served with a copy of the

5  complaint." Rule 4(e) provides that an individual may be served with copies of these

6  documents by (1) delivering them to the individual personally, (2) leaving them at the

7  individual's dwelling or usual place of abode with someone of suitable age and discretion

8  residing there, (3) delivering them to an agent authorized by appointment or law to receive

9  service of process, (4) following the state law for serving summons in the state in which the

10 district court is located, or (5) following state law for serving summons in the state in which

11 service is being made." *MedTrak VNG, Inc. v. AcuNetx, Inc.,* No. 2:12-CV-00853-LDG,

12 2012 WL 6135817, at *2–3 (D. Nev. Dec. 10, 2012). California law permits substitute service

13 by leaving a copy of the summons and complaint at the defendant's usual place of abode

14 (*i.e.*, dwelling), usual place of business, or usual mailing address (other than a U.S. Postal

15 Service post office box). Copies of the summons and complaint must be left "in the presence

16 of a competent member of the household or a person apparently in charge of [the defendant's]

17 office, place of business, or usual mailing address," and copies must thereafter be mailed to

18 the defendant at the same address where the documents were left. Substitute service is

19 permitted only "[i]f a copy of the summons and complaint cannot with reasonable diligence

20 be personally delivered to the person to be served[.]" *Block v. Brar*, No. 1:22-CV-01317-

21 SAB, 2023 WL 2541972, at *4 (E.D. Cal. Mar. 16, 2023), report and recommendation

22

23

---

24 [4] As for timing, a Rule 60(b) motion must be made within a reasonable time, a up to one year
   for Rule 60(b)(1–3) motions. *See also Lemoge v. United States*, 587 F.3d 1188, 1996 (9th

25 Cir. 2009). There is no time limit regarding Rule 60(b)(4) motions. *See Meadows v. Dom.
   Rep.*, 817 F.2d 517, 521 (9th Cir. 1987); *In re Center Wholesale, Inc.*, 759 F.2d 1440, 1448

26 (9th Cir. 1985) (stating that a motion to set aside a void judgment may be brought at any
   time); *Chambers v. Knight*, No. 18-CV-02906-BAS-BGS, 2020 WL 5759685, at *4 (S.D.

27 Cal. Sept. 28, 2020), aff'd, No. 20-56141, 2021 WL 4811360 (9th Cir. Oct. 15, 2021)
   (citations omitted) ("since a void judgment cannot acquire validity through the passage of

28 time it is widely held that a motion to vacate a judgment as void may be made at any time[.]").

MCLETCHIE LAW

ATTORNEYS AT LAW
602 SOUTH TENTH ST.
LAS VEGAS, NV 89101
(702) 728-5300 (T) / (702) 425-8220 (F)
WWW.NVLITIGATION.COM

1   adopted, No. 122CV01317ADASAB, 2023 WL 4787657 (E.D. Cal. July 27, 2023) (quoting

2   Cal. Code Civ. Proc. § 415.20(b)).

3       C.      **Standard for Personal Jurisdiction.**

4       Two categories of personal jurisdiction exist: (1) general jurisdiction[5] and (2)

5   specific jurisdiction. *Wealthy, Inc. v. Cornelia*, No. 221CV1173JCMEJY, 2023 WL

6   4803776, at *2 (D. Nev. July 27, 2023) (citing *Helicopteros Nacionales de Colombia, S.A.*

7   *v. Hall*, 466 U.S. 408, 413–15 (1984)). As Mr. Stewartson is a "resident and citizen of the

8   State of California" (ECF No. 8, ¶ 10) yet "subject to personal jurisdiction in Nevada …

9   because the defamatory statements were directed at a Nevada resident, and the effects of the

10  statements were meant to be felt in Nevada" (*id.*, ¶ 12) the Court must determine whether

11  Nevada can exercise specific jurisdiction over him. The following Ninth Circuit three-prong

12  test—the minimum contacts test—for analyzing specific personal jurisdiction applies:

13          (1) The non-resident defendant must purposefully direct his activities or
            consummate some transaction with the forum or resident thereof; or
14          perform some act by which he purposefully avails himself of the privilege
            of conducting activities in the forum, thereby invoking the benefits and
15          protections of its laws;

16          (2) the claim must be one which arises out of or relates to the defendant's
            forum-related activities; and
17
            (3) the exercise of jurisdiction must comport with fair play and substantial
18          justice, *i.e.*, it must be reasonable.

19  *Wealthy, Inc.*, 2023 WL 4803776, at *2 (quoting *Schwarzenegger v. Fred Martin Motor Co.*,

20  374 F.3d 797, 802 (9th Cir. 2004)). The plaintiff bears the burden of meeting the first two

21  prongs while the defendant shoulders the burden on the final prong. ***All three prongs must***

22  ***be met to exercise personal jurisdiction over the defendant***. *Davis v. Cranfield Aerospace*

23  *Sols., Ltd.*, 71 F.4th 1154, 1162 (9th Cir. 2023), *cert. denied*, 144 S. Ct. 826, 218 L. Ed. 2d

24

25  _____

26  [5] The complaint does not allege that Mr. Stewartson has engaged in "continuous ... operations
    within [Nevada that are] thought so substantial and of such a nature as to justify suit against"
    Mr. Stewartson "on causes of action arising from dealings entirely distinct from those
27  activities" and thus this Court cannot exercise general personal jurisdiction over him. *See*
    *King v. Am. Fam. Mut. Ins. Co.*, 632 F.3d 570, 579 (9th Cir. 2011) (quoting *Int'l Shoe*, 326
28  U.S. at 318, 66 S.Ct. 154).

MCLETCHIE LAW

ATTORNEYS AT LAW
602 SOUTH TENTH ST.
LAS VEGAS, NV 89101
(702) 728-5300 (T) / (702) 425-8220 (F)
WWW.NVLITIGATION.COM

33 (2024) (citing *Schwarzenegger*, 374 F.3d at 802) (emphasis added); *see also Pebble Beach Co. v. Caddy*, 453 F.3d 1151, 1155 (9th Cir. 2006) ("If any of the three requirements is not satisfied, jurisdiction in the forum would deprive the defendant of due process of law.")

## IV.    LEGAL ARGUMENT

### A.    The Action Must Be Dismissed (and the Judgment Must Be Set Aside As Void) Because this Court Lacks Personal Jurisdiction Over Mr. Stewartson.

The Constitution's guarantee of due process prevents Plaintiffs from availing themselves of Nevada's courts for claims against Mr. Stewartson; this lack of personal jurisdiction requires that the judgment be set aside and that the action be dismissed. As the Ninth Circuit has explained, "[a] final judgment is void, and therefore must be set aside under Federal Rule of Civil Procedure 60(b)(4)...if the court that considered it lacked jurisdiction ... over the parties to be bound." *United States v. Berke*, 170 F.3d 882, 883 (9th Cir.1999). The gravamen of the Complaint is that Mr. Stewartson made a series of allegedly defamatory statements about Plaintiffs online. Plaintiffs never allege that Mr. Stewartson made these statements while physically present in Nevada, we can presume that he made them from out-of-state, *i.e.*, from his alleged home state of California. (ECF No. 8, ¶ 10.) As the party invoking the jurisdiction of this court, plaintiffs have the burden of proving that jurisdiction. *Wealthy, Inc.*, 2023 WL 4803776, at *4 (citing *CollegeSource, Inc. v. AcademyOne, Inc.,* 653 F.3d 1066, 1073 (9th Cir. 2011)). As Plaintiffs fail to satisfy either of the first two prongs and Mr. Stewartson demonstrates that personal jurisdiction does not comport with fair play and substantial justice, the Court has ample bases to set aside the judgment at issue as void under Fed. R. Civ. P. 60(b)(4), and to dismiss Plaintiffs' complaint under Fed. R. Civ. P. 12(b)(2).

### 1.    Mr. Stewartson Did Not Purposefully Direct His Communications Toward Nevada.

To determine whether Mr. Stewartson satisfies the first prong of the *Schwarzenegger* test, the Court employs the *Calder* test, which "asks whether the defendant (1) committed an intentional act; (2) expressly aimed at the forum state; and (3) the defendant

knew that the brunt of the harm was likely to be suffered in the forum state." *Wealthy, Inc.*, 2023 WL 4803776, at *3 (citing *Washington Shoe Co. v. A–Z Sporting Goods, Inc.*, 704 F.3d 668, 673 (9th Cir. 2012)). While Mr. Stewartson concedes that the Complaint alleges that he committed an intentional act, Plaintiffs fail to demonstrate that the communications were expressly aimed at Nevada or that Mr. Stewartson knew that the brunt of the harm was likely to be suffered in Nevada. In their Motion for Default Judgment, Plaintiffs claim that Mr. Stewartson's conduct satisfies the *Calder* test. (*See* ECF No. 30, pp. 18:7 – 19:9.) Their analysis is flawed. An analysis of subsequent cases examining *Calder* demonstrates that Plaintiffs have not met their burden of demonstrating Mr. Stewartson purposefully directed activity toward Nevada.

To satisfy the second and third prongs of the *Calder* test, the Ninth Circuit requires "something more" than a passive website that has the foreseeable effect of reaching the forum state for purposeful direction to be established through internet-based activities. *TransparentBusiness, Inc. v. Infobae*, No. 320CV00582MMDWGC, 2021 WL 2670704, at *3 (D. Nev. June 29, 2021) (citing *Cybersell, Inc. v. Cybersell, Inc.*, 130 F.3d 414, 419 (9th Cir. 1997)). Here, Mr. Stewartson's alleged communications were made on passive websites that had the foreseeable effect of reaching Nevada; however, whether Mr. Stewartson either knew or should have known of Plaintiffs' Nevada citizenship when he made those communications is not the relevant inquiry. *TransparentBusiness*, 2021 WL 2670704, at *3 (citing *Walden v. Fiore*, 571 U.S. 277, 284-85 (2014)). As the Supreme Court has made clear, "it is the defendant, not the plaintiff or third parties, who must create contacts with the forum state." *Walden*, 571 U.S. at 289, 291.

Notably, neither Mr. Patel nor the Foundation alleges that either one of them was a citizen of Nevada at time the statements at issue in the Complaint were made (*i.e.*, between June 7, 2021, and May 18, 2023), just that Kash Patel was a "resident and citizen" of Nevada and that the Kash Foundation, Inc. is a nonprofit corporation "incorporated in Idaho and with its principal place of business in Nevada" as of the June 7, 2023, filing date. (ECF No. 8, ¶¶ 8-9.) Even setting that issue aside, one court in this district has expressly rejected Plaintiffs'

8

approach to personal jurisdiction in the context of defamation. In *Hutchison v. Ethical Cap. Partners*, No. 2:24-CV-00673-GMN-BNW, 2024 WL 4651079 (D. Nev. Oct. 31, 2024), the plaintiff alleged that defendants spread defamatory falsehoods about her "all over" the adult film industry—specifically that she caused another performer to overdose on lithium while in Barcelona. *Id.* at *1-2. Though defendants did "not dispute that they had knowledge that [plaintiff] resided in Nevada," the court held that "a defendant's knowledge that the plaintiff resides in the forum state is not enough, on its own, to support personal jurisdiction." *Id.* at *4 (citing *Spy Optic, Inc. v. AreaTrend, LLC*, 843 F. App'x 66, 69 (9th Cir. 2021)). This is because "knowledge that the statements would likely affect [plaintiff's] reputation in Nevada goes to the foreseeability of the harm in the forum, not whether the defamatory comments were 'expressly aimed' at Nevada." *Id.* (citing *Xcentric Ventures, LLC v. Bird*, 683 F. Supp. 2d 1068, 1073 (D. Ariz. 2010)). Thus, without "'something more' than statements made with foreseeable effects in Nevada," a plaintiff does not meet his burden of demonstrating that the Court has personal jurisdiction over an out-of-state speaker defendant. *Id.*

In *Hutchison*—just as here—the communications were specific to the plaintiff, not "specific to a particular location." *Id.* at *5. Furthermore, in *Hutchinson*, the "damaging comments were directed at the larger adult film industry in general, without regard or intention for their impacts in Nevada." *Id*. Here, Mr. Stewartson's allegedly defamatory communications (*see, e.g.,* ECF No. 8, ¶ 31) are self-evidently directed toward the American body politic writ large without regard or intention for their impacts in Nevada. Because the plaintiff in *Hutchinson* could not "establish causation between the Moving Defendants' defamatory statements and their Nevada contacts," the court dismissed her complaint with prejudice. *Id.* Here, as Plaintiffs cannot establish any causation between Mr. Stewartson's allegedly defamatory statements and **Mr. Stewartson's** contacts with Nevada (which Plaintiffs have not alleged), dismissal with prejudice is appropriate here.

Other courts in this district have consistently rejected personal jurisdiction in similar circumstances. *See SmarterSwipe, Inc. v. Navarrete*, No. 2:24-CV-00299-CDS-MDC, 2025 WL 370434, at *5 (D. Nev. Feb. 3, 2025) (no personal jurisdiction over tortious

interference claim where evidence for minimal contacts was "a single Nevada business saying they have heard that [defendant] directed to switch their merchant services"); *App-Ord. LLC v. Reynolds*, No. 2:24-CV-01480-GMN-DJA, 2025 WL 743749, at *5 (D. Nev. Mar. 7, 2025) (no personal jurisdiction where "the only basis for the inference that Defendant expressly aimed his conduct at this jurisdiction is that he intended to cause an injury to Plaintiff"); *Drexler v. Silver*, No. 323CV00128RCJCSD, 2023 WL 6721905, at *5 (D. Nev. Oct. 12, 2023) (no personal jurisdiction where plaintiff did not provide evidence "regarding where the alleged defamation or invasion of privacy claims took place," or that "[defendant] communicated about [plaintiff] ... from or to Nevada"); *Edwards v. Juan Martinez, Inc*., 2020 WL 5648319, at *3–4 (D. Nev. Sept. 22, 2020) (finding that "a defendant's relationship with a plaintiff of third party, standing alone, is an insufficient basis for jurisdiction" and "making telephone calls or sending letters and emails to the forum state is legally insufficient to permit the Court to exercise personal jurisdiction over a non-resident defendant").

Other courts in this circuit have also rejected Plaintiffs' approach to personal jurisdiction. *See Dadbod Apparel LLC v. Hildawn Design LLC*, No. 2:24-CV-00188-DJC-AC, 2025 WL 449278, at *7 (E.D. Cal. Feb. 10, 2025) ("Contact with the plaintiff is insufficient to form the basis for express aiming in light of *Walden*, even where the defendant knows of the plaintiff's presence in the forum"); *Balongo v. Balongo*, No. CV 23-00472 JMS-WRP, 2024 WL 3293620, at *5 (D. Haw. July 3, 2024) ("Personal jurisdiction is improper if the forum state was only implicated by the happenstance of [Plaintiff's] residence."); *Stebbins v. Doe*, No. 23-CV-00321-DMR, 2024 WL 557715, at *3 (N.D. Cal. Feb. 12, 2024) (no personal jurisdiction in California where plaintiff conceded defendant's video was "automatically distributed in California, simply by reason of it being on YouTube"); *Duong v. Groundhog Enterprises*, 2020 WL 2046397, at *4 (C.D. Cal. 2020) ("[T]he plaintiff cannot be the only link between the defendant and the forum.") (internal quotation marks omitted); *Axiom Foods, Inc. v. Acerchem Int'l, Inc.*, 874 F.3d 1064, 1070 (9th Cir. 2017) ("while a theory of individualized targeting may remain relevant to the minimum contacts inquiry, it will not, on its own, support the exercise of specific jurisdiction,

1    absent compliance with what *Walden* requires"); *Coffey v. Mesa Airlines, Inc.*, 2019 WL

2    4492952, at * 6 (C.D. Cal. 2019) (assertion that defendants "knew that Plaintiff was a

3    California citizen when they offered him employment" and therefore expressly aimed their

4    intentional actions at California "utterly fails to satisfy the purposeful direction test").

5           Simply put, the relevant inquiry is whether Mr. Stewartson's statements regarded

6    ***Nevada***, not Mr. Patel, who happens to (allegedly) live there. Mr. Stewartson's allegations

7    that Mr. Patel attempted to overthrow the government, planned 1/6, is guilty of sedition, is a

8    Kremlin asset, and that he and his foundation paid people to "lie to congress" (*see* ECF No.

9    8, ¶ 31) are all "entirely personal" to Mr. Patel and his foundation, and would follow them

10   wherever they might choose to live or travel. Thus, the effects of Mr. Stewartson's statements

11   are not connected to Nevada in a way that makes those effects a proper basis for jurisdiction.

12   *See Van Hook v. Crete Carrier Corp.*, No. 1:24-CV-00617-BLW-REP, 2025 WL 1643098,

13   at *4 (D. Idaho June 10, 2025), *report and recommendation adopted sub nom. Van Hook v.

14   Creete Carrier Corp.*, No. 1:24-CV-000617-BLW-REP, 2025 WL 2029915 (D. Idaho July

15   21, 2025) (quoting *Picot v. Weston*, 780 F.3d 1206, 1215 (9th Cir. 2015)).

16          Unlike cases where courts have exercised jurisdiction over defamation claims based

17   on an out-of-state defendant's communications, Plaintiffs have not alleged that Mr.

18   Stewartson's allegedly defamatory were sent to Nevada or had a "Nevada focus"—*i.e.*, they

19   concern Plaintiffs' activities in Nevada. *Compare Burri L. PA v. Skurla*, 35 F.4th 1207,

20   1214–15 (9th Cir. 2022) (affirming Arizona court's personal jurisdiction over defendant

21   where allegedly defamatory statements concerned plaintiff's activities in Arizona and were

22   intended to cause third party to terminate plaintiff's Arizona employment contract). Thus, as

23   Plaintiffs cannot satisfy the first prong of the *Schwarzenegger* test, this Court must dismiss

24   this matter with prejudice and set aside the default judgment. *See Boschetto v. Hansing*, 539

25   F.3d 1011, 1016 (9th Cir. 2008) ("if the plaintiff fails at the first step, the jurisdictional

26   inquiry ends and the case must be dismissed.").

27   ///

28   ///

MCLETCHIE LAW

ATTORNEYS AT LAW
602 SOUTH TENTH ST.
LAS VEGAS, NV 89101
(702) 728-5300 (T) / (702) 425-8220 (F)
WWW.NVLITIGATION.COM

**2.    The Claims Do Not Arise Out of Forum-Related Activities.**

Even assuming that Plaintiffs established purposeful direction, Plaintiffs' claims must also "arise out of or relate to the defendant's contacts" with the forum state for the Court to properly exercise personal jurisdiction over an out-of-state defendant. *TransparentBusiness*, 2021 WL 2670704, at *3 (quoting *Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct.*, 141 S. Ct. 1017, 1035 (2021)). Claims "arise out of" a defendant's contacts with the forum state when there is a ***causal connection*** between the contacts and the claims. *Id.* (citing *Ford Motor Co.*, 141 S.Ct. at 1026) (emphasis added).

The court's holding in *TransparentBusiness* is directly on point. There, the court held there was "no causal connection between [defendant's] contacts with Nevada and the claims because Defendant made the allegedly defamatory statements to Infobae while he was residing in Madrid, Spain." *Id.* at *4. Here, Mr. Stewartson made allegedly defamatory statements to social media sites while he was residing in California. (ECF No. 8, ¶ 10.) Because those sites are, like, Infobae, passive websites "accessible worldwide and not just in Nevada," Patel's and the Foundation's "injuries could have been experienced anywhere" which sever the causal connection between Mr. Stewartson and Nevada. *Id.*

The court's holding in *Hutchinson* is also on point. There, the court held plaintiff's allegations that defendant's "Nevada business activities"—*i.e.*, that it "sends representatives and agents to Las Vegas, and [plaintiff] regularly interacts with them"—did not give the court personal jurisdiction over defendant regarding plaintiff's defamation claim, which lacked a causal nexus to Nevada. *Hutchinson*, 2024 WL 4651079 at *6.

This matter is distinguishable from matters where the court exercised personal jurisdiction. *Compare Dhillon Express Inc. v. Scott Logistics Corp.*, No. 2:24-CV-00458 CKD, 2025 WL 894942, at *5 (E.D. Cal. Mar. 24, 2025) (finding allegedly defamatory statements arose from forum activity where statements were "about events that occurred in California, causing plaintiff to lose business in California"). Here, by contrast, none of Mr. Stewartson's communications pertain to Patel's and the Foundation's activities in Nevada,

but rather their activities on the national political stage. Thus, Nevada courts (and federal courts located in Nevada) lack personal jurisdiction over Mr. Stewartson in this matter.

### 3.    The Exercise of Jurisdiction Is Unreasonable.

The Ninth Circuit employs a seven-factor balancing test to determine the reasonableness of asserting personal jurisdiction, examining:

> (1) the extent of the defendant's purposeful interjection into the forum state's affairs; (2) the burden on the defendant of defending in the forum; (3) the extent of conflict with the sovereignty of the defendant's state; (4) the forum state's interest in adjudicating the dispute; (5) the most efficient judicial resolution of the controversy; (6) the importance of the forum to the plaintiff's interest in convenient and effective relief; and (7) the existence of an alternative forum.

*Briskin v. Shopify, Inc.*, 135 F.4th 739, 761 (9th Cir. 2025) (citing *Herbal Brands, Inc. v. Photoplaza, Inc.*, 72 F.4th 1085, 1096 (9th Cir. 2023)). Should the Court find that Plaintiffs met the first two prongs, it must find that Nevada's exercise of personal jurisdiction over Mr. Stewartson is unreasonable.

First, as argued above, Mr. Stewartson did not purposefully interject himself into Nevada by virtue of communicating on websites that can be accessed from anywhere. Plaintiffs' reliance on *Panavision Int'l, L.P. v. Toeppen*, 141 F.3d 1316, 1320 (9th Cir. 1998)—the logic of which has been undermined by *Walden* and subsequent cases regarding specific personal jurisdiction—for the proposition that "knowing where the harm would be felt was sufficient to satisfy this factor" (ECF No. 30, p. 20:6-7) is therefore misplaced. This factor thus weighs heavily against the reasonableness of personal jurisdiction.

Second, contrary to Plaintiffs' naked conclusions (ECF No. 30, p. 20:11-13), Mr. Stewartson would face various burdens litigating this matter in Nevada instead of California. (Stewartson Decl., ¶ 8.) While Mr. Stewartson acknowledges that unless the "inconvenience is so great as to constitute a deprivation of due process, it will not overcome clear justifications for the exercise of jurisdiction" (*Panavision Int'l*, 141 F.3d at 1323) here there is no clear justification for the exercise of jurisdiction. Thus, in light of the lack of any clear justification for jurisdiction to lie in Nevada, the inconvenience of litigating this matter in Nevada militates against finding jurisdiction here.

MCLETCHIE LAW
ATTORNEYS AT LAW
602 SOUTH TENTH ST.
LAS VEGAS, NV 89101
(702) 728-5300 (T) / (702) 425-8220 (F)
WWW.NVLITIGATION.COM

Although Mr. Stewartson concedes that there is no conflict between Nevada's and California's sovereignties as the claims will be litigated under the same constitutional rubric regardless of the jurisdiction, Plaintiffs' argument that Nevada's "strong interest in protecting its residents from torts that cause injury within the state, and in providing a forum for relief" (ECF No. 30, p. 20;17-19 (quoting *Brainerd v. Governors of the Univ. of Alberta*, 873 F.2d 1257, 1260 (9th Cir.1989)) weighs in favor of reasonableness is misplaced. At the very least, California also has a strong interest in protecting its residents from judgments obtained against them in violation of due process.

Though Plaintiffs correctly note that courts primarily look at where the witnesses and evidence are likely to be located, Plaintiffs' argument that jurisdiction would be "most efficient" in Nevada is premised on the existence of default, and thus that the only relevant evidence would be related to Plaintiffs' damages in Nevada. (ECF No. 30, pp. 20:21 – 21:2.) This premise is false; should this court permit Mr. Stewartson to contest this matter on the merits, much of the relevant evidence—particularly regarding Mr. Stewartson's belief in the truth of his statements—is located where Mr. Stewartson lives in California. Thus, this factor weighs against the reasonableness of jurisdiction in Nevada.

Plaintiffs' argument that "jurisdiction in Nevada would afford Plaintiffs the most convenient and efficient way to obtain relief" (ECF No. 30, p. 21:3-4) is of little import here. *See Panavision Int'l*, 141 F.3d at 1324 ("In evaluating the convenience and effectiveness of relief for the plaintiff, we have given little weight to the plaintiff's inconvenience.") Indeed, it does not pass the laugh test that Mr. Patel—the nominal head of the nation's top federal law enforcement agency—would be inconvenienced by litigating this matter in California. Indeed, as Plaintiffs admit, California would be an alternate forum. (ECF No. 30, p. 21:10.) The mere existence of such a forum weighs this factor in favor of Mr. Stewartson. *See Panavision Int'l*, 141 F.3d at 1324 (factor weighs in favor of defendant where, even though "it may be more costly and inconvenient for [California plaintiff] to litigate in Illinois, but this is not an unreasonable burden"). Thus, on balance, it would not be reasonable for this Court to exercise personal jurisdiction over Plaintiffs' claims against Mr. Stewartson.

**B.    Plaintiffs' Failure to Effectuate Service Supports Setting Aside Default Judgment and Dismissing the Instant Matter.**

Under Fed. R. Civ. P. 60(b)(4), a judgment is void if it involved a "jurisdictional error." *United Student Aid Funds, Inc. v. Espinosa*, 559 U.S. 260, 271, 130 S.Ct. 1367, 176 L.Ed.2d 158 (2010). "[S]ervice of process is the means by which a court asserts its jurisdiction over the person." *SEC v. Ross*, 504 F.3d 1130, 1138 (9th Cir. 2007). "[I]n the absence of proper service of process, the district court has no power to render any judgment against [a party's] person or property unless the [party] has consented to jurisdiction or waived the lack of process." *Id.* at 1138–39. *See also Direct Mail Specialists, Inc. v. Eclat Computerized Techs., Inc. (Direct Mail)*, 840 F.2d 685, 688 (9th Cir. 1988) ("A federal court does not have jurisdiction over a defendant unless the defendant has been served properly under Fed. R. Civ. P. 4.").

"For substituted service to be reasonably calculated to give an interested party notice of the pendency of the action and an opportunity to be heard, service must be made upon a person whose relationship to the person to be served makes it more likely than not that they will deliver process to the named party." *Block*, 2023 WL 2541972, at *6 (quoting *Produce v. Cal. Harvest Healthy Foods Ranch Mkt.*, No. C-11-04814 DMR, 2012 WL 259575, at *3 (N.D. Cal. Jan. 27, 2012)). Here, substituted service was not reasonably calculated to give Mr. Stewartson notice of service, the affidavit of service conclusorily states that the summons and complaints were left with "John Doe, housemate of Jim Stewartson, a person of suitable age and discretion, who stated that he/she resides therein with Jim Stewartson." (ECF No. 19.) The court's decision in *Block* is instructive: there, the service affidavit merely stated statement that the "John Doe" with whom the summons and complaint was left was "a competent member of [defendant's] household" and did "not include any facts to describe how substitute service was completed or describe facts to support the process server's determination that Doe was a 'member of the household.'" *Block*, 2023 WL 2541972, at *6. As the affidavit contained no facts "to demonstrate Doe actually understood the significance of the documents being handed to her, or that she was required to forward

the documents to [defendant]," the court declined to find service of process sufficient to enter default judgment against the defendant. *Id.* at *6-7.

It is also notable that Plaintiffs allegedly effectuated service upon a "John Doe" at an address that servers had previously determined Mr. Stewartson had moved away from. (*Compare* ECF No. 19 *with* ECF No. 14.) One court has expressed skepticism regarding whether this type of service is sufficient, to the point where it ordered the Plaintiff to show cause why its unopposed motion for default judgment should not be denied for failure to establish effective service of process. *See Bd. of Trs. of Cement Masons Health & Welfare Tr. Fund for N. California v. Mercoza*, No. 24-CV-03427-LJC, 2025 WL 2391550, at *3 (N.D. Cal. Aug. 18, 2025) (questioning service where "Despite being informed in August 2024 that [defendant] was not located at 1111 Broadway, Plaintiffs purport to have effectuated service on [defendant] at the same location" by leaving with a "John Doe"). Even probable clerical errors in affidavits of substituted service can make such service ineffectual. *See InTouch Mktg., Inc. v. Anzaldua*, No. 8:23-CV-02457-SPG-KES, 2024 WL 5466482, at *2 (C.D. Cal. Oct. 7, 2024) (denying motion for default where process server "attempted to serve Defendant Manuel Anzaldua by leaving the summons, complaint, and related documents with a person named 'Yuliana Anzaldua' at the residence" where wife's name was actually "Yuliana Espinoza").

Here, Mr. Stewartson has never—including on October 7, 2023—resided with an unknown male at 1526 Steinhart Ave. or any other address, much less a male matching the description reflected in the affidavit of service. (Stewartson Decl., ¶ 3.) Mr. Stewartson has, at all relevant times, resided with his wife. (Stewartson Decl., ¶ 4.) Thus, as service was not properly effectuated upon Mr. Stewartson, the default must be set aside under Fed. R. Civ. P. 60(b)(4) and this matter must be dismissed pursuant to Fed. R. Civ. P. 12(b)(5).

**C.    Additional Bases to Set Aside Default Judgment Under Rule 60.**

In considering a motion to set aside default judgment under Fed. R. Civ. P. 60(b)(1), the court must determine "whether the defendant's culpable conduct led to the default; whether the defendant has a meritorious defense; and whether reopening the default

MCLETCHIE LAW

ATTORNEYS AT LAW
602 SOUTH TENTH ST.
LAS VEGAS, NV 89101
(702) 728-5300 (T) / (702) 425-8220 (F)
WWW.NVLITIGATION.COM

judgment would prejudice the plaintiff." *TCI Grp. Life Ins. Plan v. Knoebber*, 244 F.3d 691, 695 (9th Cir. 2001), *as amended on denial of reh'g and reh'g en banc* (May 9, 2001) (citing *Falk v. Allen*, 739 F.2d 461, 463 (9th Cir.1984) (per curiam). As argued below, Mr. Stewartson meets this "good cause" standard.

### 1.    Minimal Culpable Conduct.

Even assuming that Mr. Stewartson had constructive knowledge of the lawsuit, he was never served with the Complaint, as detailed above. Additionally, he did not receive a copy of the Affidavit in Support of Default (ECF No. 20) or Plaintiffs' Motion for Default Judgment. (Stewartson Decl., ¶¶ 6-7.) Moreover, the docket reflects that Plaintiffs did not file any certificate of service detailing service by mail.

In any case, from the face of that Affidavit, it is apparent that, at best, Plaintiffs just mailed a copy and did not personally serve it. (ECF No. 20, p. 2:16-17.) This cuts against culpability. *Cf. Emp. Painters' Tr. v. Ethan Enters., Inc.*, 480 F.3d 993, 1001 (9th Cir. 2007) (defendants failed to meet burden under Rule 60(b)(3) where plaintiffs "served notice of the default on the defendants in the same manner as they had served previous pleadings").

### 2.    Mr. Stewartson Has Meritorious Defenses.

In addition to the defenses argued above, Mr. Stewartson has defenses on the merits of Plaintiffs' claims that he should have a full opportunity to present, particularly in light of the First Amendment issues at stake. Mr. Stewartson cannot be liable for the alleged statements at issue as Plaintiffs are public figures and all of Mr. Stewartson's statements are either true, made without knowledge of falsehood, or opinions insusceptible of defamatory meaning.[6]  Importantly, "political speech is the quintessential example of protected speech,

---

[6] The general elements of a defamation claim are: "(1) a false and defamatory statement by [a] defendant concerning the plaintiff; (2) an unprivileged publication to a third person; (3) fault, amounting to at least negligence; and (4) actual or presumed damages." *Pegasus v. Reno Newspapers, Inc.,* 118 Nev. 706, 718, 57 P.3d 82, 90 (2002).  The standard that applies to the fault element (3) depends on the character of the plaintiff and/or the nature of the controversy and because the speech involves a matter of public concern. If the speech is about a matter of plaintiff is deemed either a public official or a public figure, the plaintiff bears the burden of proving that the defamatory statement was made with actual malice, *i.e.*,

and it is inherently controversial"; thus, the fact "[t]hat some may not like the political message being conveyed is par for the course and cannot itself be a basis for finding disruption of a kind that outweighs the speaker's First Amendment rights." *Dodge v. Evergreen Sch. Dist. #114*, 56 F.4th 767, 783 (9th Cir. 2022) "Expressions of opinion may be derogatory and disparaging; nevertheless they are protected by the First Amendment of the United States Constitution[.]" *Clifford v. Trump*, 339 F. Supp. 3d 915, 925 (C.D. Cal. 2018), aff'd, 818 F. App'x 746 (9th Cir. 2020) (citation omitted).

While statements of opinion are not categorically exempt, they are not actionable unless they imply an assertion of fact—and the fact is false. This requirement is designed to ensure the very type of public debate at issue here does not create liability:

> The *New York Times–Butts–Gertz* culpability requirements further ensure that debate on public issues remains "uninhibited, robust, and wide-open." *New York Times,* 376 U.S., at 270, 84 S.Ct., at 720. Thus, where a statement of "opinion" on a matter of public concern reasonably implies false and defamatory facts regarding public figures or officials, those individuals must show that such statements were made with knowledge of their false implications or with reckless disregard of their truth.

*Milkovich v. Lorain J. Co.,* 497 U.S. 1, 20, 110 S. Ct. 2695, 2706–07, 111 L. Ed. 2d 1 (1990). The statements at issue involve matters of public concern concerning high-ranking officials (Mr. Patel and others in the Trump Administration) and are thus subject to following analysis:

> 1. A statement on matters of public concern must be provable as false before there can be liability for defamation.
>
> 2. The United States Constitution protects statements that cannot reasonably be interpreted as stating actual facts about an individual made in debate over public matters in order to provide assurance that public debate will not

---

with knowledge of the statement's falsity at the time the statement was made (or a high degree of probable falsity). *See also Nev. Indep. Broad Corp. v. Allen*, 99 Nev. 404, 414, 664 P.2d 337, 344 (1983). Underlying this limitation on defamation is the importance of allowing the free flow of information concerning and criticism of public officials. As the United States Supreme Court has explained that "[t]he public-official rule protects the paramount public interest in a free flow of information to the people concerning public officials, their servants" and "[f]ew personal attributes are more germane to fitness for office than dishonesty, malfeasance, or improper motivation." *Garrison v. State of La.*, 379 U.S. 64, 77, 85 S. Ct. 209, 217, 13 L. Ed. 2d 125 (1964).

suffer for lack of imaginative expression or the rhetorical hyperbole which has traditionally added much to the discourse of the United States.

3. Where a statement of "opinion" on a matter of public concern reasonably implies false and defamatory facts regarding public figures or officials, those individuals must show that such statements were made with knowledge of their false implications or with reckless disregard of their truth, and where such a statement involves a private figure on a matter of public concern, a plaintiff must show that the false connotations were made with some level of fault.

*Clifford,* 339 F. Supp. 3d at 926. The statements here are protected under this framework—just like Mr. Trump's tweet accusing Ms. Clifford of a "total con job" was. *Id.*

Plaintiffs cannot get past the first step of the analysis as the statements are not provably false and their vitriolic nature does not render them actionable. Instead, the context of heated, short-form political discourse on X[7] reinforces that the statements at issue are political rhetoric and hyperbole, like Mr. Trump's tweet in *Clifford. Id.* at 927. "[W]hen the surrounding circumstances of a statement are those of a heated political debate, where certain remarks are necessarily understood as ridicule or vituperation, ... the statement cannot reasonably be taken as anything but opinion." *Herring Networks, Inc. v. Maddow*, 8 F.4th 1148, 1157 (9th Cir. 2021) (quoting *Koch v. Goldway*, 817 F.2d 507, 509 (9th Cir. 1987)).

The fact that Plaintiffs predicate their claims in part on the fact that Mr. Stewartson called Mr. Patel a "chud"[8] is illustrative of the fact that the Complaint does not target statements that are provably false, especially in light of the context. Citing to Wikipedia[9], Plaintiffs explain:

"Chud" is a pejorative, used mostly to describe "a person on the political right" who "holds socio-political views seen as regressive or bigoted" and also implies physical unattractiveness.[10]

---

[7] While Plaintiffs also complain about statements repeated elsewhere (p.17 ¶50 (Substack)), the Complaint is focused on posts made on the social media X (formerly known as Twitter).

[8] (*See* ECF No. 8, ¶ 56 ("Defendant regularly uses the derogatory term "chud" to describe Mr. Patel and calls for his arrest."); *see also id.*, ¶¶ 40, 55.)

[9] *See* Wiktionary, https://en.wiktionary.org/wiki/chud.

[10] ECF No. 8, p. 19, n. 10.

MCLETCHIE LAW

ATTORNEYS AT LAW
602 SOUTH TENTH ST.
LAS VEGAS, NV 89101
(702) 728-5300 (T) / (702) 425-8220 (F)
WWW.NVLITIGATION.COM

Calling someone "regressive or bigoted" is protected.[11] While unkind, so is criticizing someone's appearance. *See, e.g., Caron v. Bangor Pub. Co.*, 470 A.2d 782, 785 (Me. 1984) (statement that plaintiff was too obese "to be either an effective cop on the beat or a tribute to his uniform" held to be non-actionable opinion).

Like calling Mr. Patel a "chud," that Mr. Stewartson's other criticisms of public figure Mr. Patel are not actionable because they are not provably false[12] is also evident when evaluating other statements[13]:

a)    Mr. Patel Attempted to Overthrow the Government; Mr. Patel Is Guilty of Sedition:

Within the context of political rhetoric on the platform X, referring to someone as a seditionist or treasonous is not provably false.[14] Accusing political opponents of sedition— or worse yet, treason—is a time-honored rhetorical flourish that has been regularly employed by President Trump himself.[15] Even if that were not the case, these statements would not be

---

[11] *See, e.g., Overhill Farms, Inc. v. Lopez*, 119 Cal. Rptr. 3d 127, 140 (2010) (accusing someone of being racist or discriminatory "is no more than meaningless name calling" and is not defamatory); *Dodge v. Evergreen Sch. Dist. No. 114*, No. 3:20-CV-05224-RBL, 2020 WL 4366054, at *6 (W.D. Wash. July 30, 2020) ("Whether wearing a MAGA hat conveys racism or patriotism is a subjective matter not open to conclusive proof one way or the other. Indeed, whether someone is racist, bigoted, and hateful in general is not a factual question."); *Baca v. Moreno Valley Unified Sch. Dist.*, 936 F. Supp. 719, 728, n. 6 (C.D. Cal. 1996) (even a statement "couched as fact (*e.g.*, 'X is a racist'), is legally an expression of opinion rather than a statement of fact and hence not actionable as slander."); *Stevens v. Tillman*, 855 F.2d 394, 402 (7th Cir. 1988) (holding that the terms "racist" and "bigoted" have been "watered down by overuse" and are non-actionable unless they "impl[y] the existence of undisclosed, defamatory facts"); *Smith v. School Dist. of Philadelphia*, 112 F. Supp. 2d 417, 429 (E.D. Pa. 2000) ("While . . . a statement that plaintiff is 'racist and anti-Semitic,' if it was made, would be unflattering, annoying and embarrassing, such a statement does not rise to the level of defamation as a matter of law because it is merely non-fact based rhetoric.").

[12] The fact that Mr. Stewartson believed in the veracity of any statements of facts he made about Plaintiff at the time he made them (Stewartson Decl., ¶ 9), also shows any attempt to establish fault equivalent to "actual malice" will fail.

[13] (*See* ECF No. 30, p. 7:4-8.)

[14] *See e.g., El Paso Times, Inc. v. Trexler*, 447 S.W.2d 403, 406 (Tex. 1969) (letter to the editor accusing an organizer of an anti-Vietnam war protest of treason not actionable).

[15] "The 24 times Trump has accused somebody of "treason"" https://www.axios.com/2019/06/16/trump-treason-russia-investigation-new-york-times

actionable. Sedition is defined as "incitement of resistance to or insurrection against lawful authority."[16] By allegedly delaying in deploying troops to quell the Capitol riots, Patel arguably did exactly that—permitting rioters to continue to rebel against the lawful authority of Congress to certify the results of the 2020 election. Furthermore, Patel's memoir, *Government Gangsters: The Deep State, the Truth, and the Battle for Our Democracy*, is essentially an admission that he committed sedition by battling "government gangsters"—*i.e.*, "career bureaucrats" who are part of the "deep state." Although Mr. Patel may feel his defiance of these "government gangsters"—lawfully elected and/or appointed agents and employees of the United States—was justified, it still fits the definition of "sedition," making the statements substantially true if not nonactionable rhetorical hyperbole.

b)    Mr. Patel Planned January 6:

Whether "Mr. Patel Planned January 6" is a hotly debated matter and protected political rhetoric and thus not actionable. Even if that were not the case, Plaintiffs cannot show actual malice and there is even ample support for the contention's truthfulness. In an August 21, 2021, tweet, Mr. Stewartson stated that, based on reporting by Vanity Fair journalist Adam Ciralsky, Patel and Ezra Cohen were "calling all the shots" on January 6, 2021, with regard to how National Guard troops would be deployed to quell the Capitol riots. The Ciralsky article also referenced criticism that the Department of Defense "dragged its feet" in sending in troops to quell the Capitol riots, despite already having authorization to do so. Indeed, in the tweet, Mr. Stewartson supplied a memorandum issued by Secretary of Defense Christopher Miller on January 4, 2021, authorizing the deployment of the DC National Guard in response to planned demonstrations on January 5th and 6th. As Ciralsky put it, the implication of this delayed deployment is that Trump either effectively abdicated his role as commander in chief, or "he was deliberately stiff-arming some of his top officials because he was, in effect, ***siding with the insurrectionists and their cause of denying Biden's victory***." (emphasis added).

---

[16] https://www.merriam-webster.com/dictionary/sedition

21

MCLETCHIE LAW

ATTORNEYS AT LAW
602 SOUTH TENTH ST.
LAS VEGAS, NV 89101
(702) 728-5300 (T) / (702) 425-8220 (F)
WWW.NVLITIGATION.COM

c)      Mr. Patel is a Kremlin asset:

Allegations that Mr. Patel is a "Kremlin asset" are plainly protected speech. *Herring Networks, Inc.* is directly on point. There, the plaintiff sued MSNBC commentator Rachel Maddow for stating that it "really literally is paid Russian propaganda" in the context of allegations that one of its employees also produced "government-funded pro-Putin propaganda for a Russian government funded propaganda outfit called Sputnik." *Herring Networks, Inc.*, 8 F.4th at 1153. The court employed the three-factor test to determine whether a reasonable factfinder could conclude that the challenged statement implies an assertion of objective fact: "(1) whether the general tenor of the entire work negates the impression that the defendant was asserting an objective fact, (2) whether the defendant used figurative or hyperbolic language that negates that impression, and (3) whether the statement in question is susceptible of being proved true or false." *Id.* at 1157 (quoting *Partington v. Bugliosi*, 56 F.3d 1147, 1153 (9th Cir. 1995)). Notably, the court held that the broad context of Maddow's show—much like the broad political context of Mr. Stewartson's tweets— makes it more likely that her audiences will "expect her to use subjective language that comports with her political opinions." *Id.* Plaintiff's complaint characterized Maddow as "a liberal television host," and MSNBC's cable programming as "liberal politics," which supported "Maddow's argument that a reasonable viewer would not conclude the statement implies an assertion of fact." *Id.* Here, Mr. Patel's complaint makes similar allegations regarding the political nature of Mr. Stewartson's communications—*e.g.*, that he defames conservative figures and activists while also advocating against misinformation. (ECF No. 8, ¶¶ 2, 3, 24-27.) Indeed, a Florida court—subsequently affirmed on appeal—held that calling retired general Michael Flynn a "Putin employee" on Twitter was nonactionable rhetorical hyperbole. *Flynn v. Wilson*, 398 So. 3d 1103, 1106 (Fla. Dist. Ct. App. 2024).

Even if calling Mr. Patel a "Kremlin asset" were not protected rhetorical hyperbole, subsequent reporting in fact supports Mr. Stewartson's assertions. For instance, in February 2025, Mother Jones reported that Mr. Patel was paid $25,000 to appear in an anti-FBI documentary made by filmmaker Igor Lopatonok, who has "ties to Russian propaganda and

disinformation efforts."[17] Patel was also a paid consultant for The Czechoslovak Group, a foreign arms conglomerate which then-senator J.D. Vance claimed had "ties to the inner circle of Russian President Vladimir Putin."[18] Finally, Russian state media itself has praised Mr. Patel as a "beaut" and one of the people Trump was bringing in who would "quickly dismantle America, brick by brick."[19]

d)    Mr. Patel Pays People to Lie to Congress:

Not only is this statement also rhetorical hyperbole in the context of a political debate, but there is support for them. During a May, 2023, hearing of the House Select Subcommittee on the Weaponization of the Federal Government, FBI special agents Steven Friend and Garrett O'Boyle testified that they had received money from Mr. Patel.[20] Members of Congress subsequently accused O'Boyle of lying to them, even referring the matter to the Attorney General for potential perjury charges.[21] While default would be appropriate to let Mr. Stewartson assert defenses even if just some of the statements he was sued over were protected, in fact, none of the statements at issue are actionable. Plaintiffs cannot show that the statements were these statements are provably false—let alone that Mr. Stewartson knew they were false or acted with reckless disregard for their falsity ant thus made with "actual malice." At the very least, Mr. Stewartson should have a full opportunity to litigate these issues on the merits.

**3.    No Prejudice.**

To be prejudicial, the setting aside of a judgment must result in greater harm than simply delaying resolution of the case. Rather than delay, "the standard is whether

---

[17]    https://www.motherjones.com/politics/2025/02/kash-patel-fbi-trump-tucker-carlson-russia-ukraine-putin/

[18]    https://www.pbs.org/newshour/politics/patels-roster-of-foreign-clients-draws-scrutiny-over-conflicting-interests-with-the-fbi

[19] https://youtu.be/kYGSEFxPaLg?si=i2weCuULv5p4b4-U&t=384

[20]    https://www.independent.co.uk/news/world/americas/us-politics/fbi-whistleblowers-trump-kash-patel-b2342170.html

[21]    https://www.nbcnews.com/politics/congress/fbi-agent-testified-republicans-was-suspended-leaked-classified-inform-rcna88407

1  [plaintiff's] ability to pursue his claim will be hindered." *TCI Grp.*, 244 F.3d at 701 (9th Cir.

2  2001) (citing *Falk*, 739 F.2d at 463; *Thompson v. Am. Home Assurance Co.*, 95 F.3d 429,

3  433–34 (9th Cir. 1996)). Here, no tangible harm to Plaintiffs other than the loss of their

4  windfall default judgment—such as loss of evidence, increased difficulties of discovery, or

5  greater opportunity for fraud or collusion—will result from vacating it. This is because their

6  claims are all based on communications made in 2023 which have been preserved by

7  Plaintiffs, and Mr. Stewartson's defenses do not rely on further discovery.

8               **4.    Balance of the Factors.**

9               Here there is no culpable conduct but courts in this district have found that setting

10  aside default can nonetheless be warranted **even where the defendant has engaged in**

11  **culpable conduct** because "judgment by default is a drastic step appropriate only in extreme

12  circumstances; a case should, whenever possible, be decided on the merits." *First Am. Title*

13  *Ins. Co. v. Com. Assocs., LLC*, No. 2:15-CV-00832-RFB, 2015 WL 4773566, at *4 (D. Nev.

14  Aug. 13, 2015) (quoting *Mesle,* 615 F.3d at 1091). Here, Mr. Stewartson retained counsel

15  and moved to set aside the default judgment shortly after learning it was entered against him.

16  Subject to the defenses asserted herein, as in *First Am. Title Ins. Co.*, Mr. Stewartson is

17  willing and able to fully participate in this case going forward. *See First Am. Title Ins. Co. v.*

18  *Com. Assocs.,* 2015 WL 4773566, at *4; *see also* Stewartson Decl., ¶ 10.

19  **V.    CONCLUSION**

20               For the reasons detailed above, the default judgment against Mr. Stewartson must

21  be set aside and this matter dismissed. In the alternative, the default should be lifted and Mr.

22  Stewartson should have the full opportunity to defend himself and protect his First

23  Amendment rights.

24               DATED this 5th day of September, 2025.

25

26               /s/ Margaret A. McLetchie
               _____
27               MARGARET A. MCLETCHIE, Nevada Bar No. 10931
               LEO S. WOLPERT, Nevada Bar No. 12658
28

24