ADAM R. FULTON
Nev. Bar No. 11572
JENNINGS & FULTON, LTD.
2580 Sorrel Street
Las Vegas, Nevada 89146
Phone: (702) 979-3565
Fax: (702) 362-2060
afulton@jfnvlaw.com

JASON C. GREAVES (*pro hac vice*)
JARED J. ROBERTS (*pro hac vice*)
BINNALL LAW GROUP, PLLC
717 King Street, Suite 200
Alexandria, Virginia 22314
Tel: (703) 888-1943
Fax: (703) 888-1930
jason@binnall.com
jared@binnall.com

*Attorneys for Plaintiffs*

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEVADA – LAS VEGAS DIVISION

KASHYAP PATEL *et al.*,

      Plaintiffs,

v.

JIM STEWARTSON,

      Defendant.

)
)
)
)
)
)
)
)
)
)
)
)
)

Case No.: 2:23-cv-873-APG-NJK

**PLAINTIFFS' SUPPLEMENTAL BRIEF IN RESPONSE TO THE COURT'S ORDER OF APRIL 19, 2026**

Plaintiffs, Kashyap Patel and Kash Foundation Inc., by and through counsel, hereby submits their response to the Court's April 19, 2026, Order, ECF 53, requesting additional briefing. This response is supported by the attached memorandum of points and authorities, all exhibits and declarations submitted therewith, and any oral argument that the Court may entertain at hearing.

- 1 -

/s/ Jared J. Roberts

Jason C. Greaves *(pro hac vice)*
Jared J. Roberts *(pro hac* vice)
BINNALL LAW GROUP, PLLC
717 King Street, Suite 200
Alexandria, Virginia 22314
Phone: (703) 888-1943
Fax: (703) 888-1930
jason@binnall.com
jared@binnall.com

Adam R. Fulton
(Nev. Bar No. 11572)
JENNINGS & FULTON, LTD.
2580 Sorrel Street
Las Vegas, Nevada 89146
Phone: (702) 979-3565
Fax: (702) 362-2060
afulton@jfnvlaw.com


*Counsel for Plaintiffs*

**MEMORANDUM OF POINTS AND AUTHORITIES**

On April 19, 2026, this Court entered an order that denied in part Defendant's motions to set aside default judgment and dismiss and ordered supplemental briefing. In response, Plaintiffs state as follows.

### I.     Defendant Must Prove Lack of Personal Jurisdiction.

Under ordinary Rule 12(b)(2) practice, the plaintiff bears the burden to prove that personal jurisdiction exists. *See Dole Food Co. v. Watts*, 303 F.3d 1104, 1108 (9th Cir. 2002). That allocation, however, must shift when the defendant's challenge to jurisdiction comes *after* the court has entered a final default judgment. Post-judgment challenges fall under Federal Rule of Civil Procedure 60, which demands that the moving party prove every element justifying relief.

The Supreme Court recognized that "a defendant is always free to ignore . . . judicial proceedings, risk a default judgment, and then challenge that judgment on jurisdictional grounds in a collateral proceeding." *Ins. Corp. of Ir. v. Compagnie Des Bauxites De Guinee*, 456 U.S. 694, 706 (1982). Rule 60 governs such collateral proceedings and provides, in relevant part, that "[o]n motion and just terms, the court may relieve a party . . . from a final judgment, order, or proceeding" for one of several enumerated reasons, including, in subsection four, that "the judgment is void." Fed. R. Civ. P. 60(b)(4). In *Cassidy v. Tenorio*, the Ninth Circuit stated the general premise that the movant "bears the burden of proving the existence of a justification for Rule 60(b) relief." 856 F.2d 1412, 1415 (9th Cir. 1988) (citing *Atchison, Topeka & Santa Fe Ry. Co. v. Barrett*, 246 F.2d 846, 849 (9th Cir. 1957)). In doing so, *Cassidy* did not limit its holding to any particular subsection of Rule 60(b).

While *Cassidy* itself involved a Rule 60(b) motion premised on alleged fraud and undue influence, its general broad application stands. The Ninth Circuit subsequently applied that principle to hold that a defendant who had actual notice of the original proceeding, but waited until after entry of default judgment to challenge the proceedings on jurisdictional grounds under Rule 60(b)(4), "bears the burden to prove that he is entitled to relief." *S.E.C. v. Internet Solutions for Business Inc.*, 509 F.3d 1161, 1166 (9th

Cir. 2007).  Specifically, in *Internet Solutions*, the plaintiff asserted that it properly served the defendant and then obtained a default judgment after the defendant failed to appear. *Id.* at 1163. Three and a half years later, the defendant appeared, "arguing that the judgment is void [under Rule 60(b)(4)] for lack of personal jurisdiction because he was never served with process." *Id.* The Ninth Circuit, therefore, held that "where the defendant had actual notice of the original proceeding but delayed in bringing the motion until after entry of default judgment, bears the burden of proving that service did not occur." *Id.* Accordingly, the Ninth Circuit was clear that if a party alleges a judgment is void for lack of personal jurisdiction, the moving party holds the burden. Such a ruling "comports with general principles of fairness." *Id.* at 1166. "The defendant who chooses not to put the plaintiff to its proof, but instead allows default judgment to be entered and waits, for whatever reason, until a later time to challenge the plaintiff's action, should have to bear the consequences of such delay." *Id.* In *MetroPCS v. A2Z Connection, LLC*, this District came to the same conclusion, holding that to obtain relief pursuant to Rule 60(b)(4) for lack of personal jurisdiction, the defendant "bears the burden to show that this court lacked jurisdiction over him." No. 2:15-cv-01412-JAD-CWH, 2018 WL 3785384, at *5 (D. Nev. Aug. 9, 2018) (citing *Internet Solutions*, 509 F.3d at 1164–67).

Here, Defendant's conduct epitomizes the strategic default that *Internet Solutions* sought to deter. Defendant admitted he had actual notice of the suit. ECF No. 53 at 4. He referenced the suit countless times online, including posting court documents from this case, and even fundraising off the litigation. *Id.*; ECF 30 at 16. Still, he declined to defend the action in court. He cannot now demand that Plaintiffs reconstruct, years after the fact, a jurisdictional record he could have tested at any time through the ordinary Rule 12 procedure. He bears the burden of proving the absence of personal jurisdiction.

Furthermore, *Gonzalez* does not control. As the Court observed in its Order, *Thomas P. Gonzalez Corp. v. Consejo Nacional De Produccion De Costa Rica*, 614 F.2d 1247 (9th Cir. 1980) did not litigate or decide the burden-of-proof question. ECF 53 at 6. The opinion's brief observation that the plaintiff "ha[d] not established a systematic and continuous course of business" was made without any discussion of which

party bore the burden. *Thomas P. Gonzalez Corp.*, 614 F.2d at 1256. *Thomas P. Gonzalez Corp.* predates *Internet Solutions* by nearly three decades, and its general statements must be read in light of the Ninth Circuit's more recent and more carefully reasoned guidance regarding the consequences of strategic default.

As illustrated in the following section, Defendant cannot meet his burden. This Court has already implicitly recognized personal jurisdiction. When the Court entered default judgment on August 5, 2025, the Court found that "[t]he motion satisfies the factors set forth in *Eitel v. McCool*, 782 F.2d 1470, 1471–72 (9th Cir. 1986)." ECF 40 at 1. As Plaintiffs explained in their motion for default judgment, those factors include the existence of personal jurisdiction over the defendant. *See* ECF 30 at 5. The Court's good-cause finding was thus an implicit determination that personal jurisdiction existed at the time of default judgment. And even if the Court were to rule contrary to the precedent above and shift the burden to Plaintiffs to demonstrate personal jurisdiction, Plaintiffs need only make a "prima facie showing," which they have done. *Dole Food Co.*, 303 F.3d at 1108.

## II.    Defendant Cannot Meet His Burden.

Personal jurisdiction over Defendant exists in Nevada regardless of which party bears that burden. Nevada's long-arm statute extends personal jurisdiction to its constitutional limit and is "coextensive with federal due process requirements," meaning the analysis under state law and federal law is the same. *See* NEV. REV. STAT. § 14.065; *Larson v. Galliher*, No. 2:06–cv–1471, 2007 WL 81930, at *2 (D. Nev. Jan. 5, 2007). For the Court to exercise specific personal jurisdiction over a defendant, it must find that the defendant: (1) purposefully directed his activities toward the forum state or "purposefully avail[ed] himself of the privileges of conducting activities in the forum"; (2) the claim arose "out of or relates to the defendant's forum-related activities"; and (3) "the exercise of jurisdiction must comport with fair play and substantial justice, i.e. it must be reasonable." *Dole Food Co. v. Watts*, 303 F.3d 1104, 1111 (9th Cir. 2002) (citing *Caruth v. Int'l Psychoanalytical Ass'n*, 59 F.3d 126, 127 (9th Cir. 1995)). Each of these elements is readily satisfied.

- 3 -

**1.  Defendant purposefully directed his statements toward Nevada.**

As the Ninth Circuit has further held, "the purposeful direction or availment requirement for specific jurisdiction is analyzed in intentional tort cases under the 'effects test'" derived from *Calder v. Jones. Dole*, 303 F.3d at 1111 (citing *Calder v. Jones*, 465 U.S. 783 (1984)). Under that test, "the defendant allegedly must have (1) committed an intentional act, (2) expressly aimed at the forum state, (3) causing harm that the defendant knows is likely to be suffered in the forum state." *Id.*

First, intent is typically straightforward and evident from a defendant's deliberate actions. *See, e.g., Mavrix Photo, Inc. v. Brand Technologies, Inc.*, 647 F.3d 1218, 1229 (9th Cir. 2011). Defendant in this case acted intentionally. The Complaint contains numerous instances of defamatory statements Defendant made from June 7, 2021, until at least May 18, 2023. Compl. ¶¶ 31-57. Defendant has not argued or claimed that he did not make the statements alleged in the Complaint.

Second, whether a defendant's actions are "expressly aimed," the Ninth Circuit has held that "operating even a passive website in conjunction with 'something'—conduct directly targeting the forum—is sufficient to confer personal jurisdiction." *Rio Properties, Inc. v. Rio Intern. Interlink*, 284 F.3d 1007, 1020 (9th Cir. 2002) (quoting *Panavision Int'l, L.P. v. Toeppen*, 141 F.3d 1316, 1322 (9th Cir. 1998)). In *Rio Properties*, the Ninth Circuit held that a defendant's specific contact with parties in Nevada was sufficient to be "something more" and constitute personal jurisdiction. *Id.* at 1020–21. Similarly, in *Calder*, the Supreme Court found a defamatory article published outside the forum state to be expressly aimed at the forum state because the story "concerned the California activities of a California resident" and "the brunt of the harm . . . was suffered in California." *Calder*, 465 U.S. at 788-89.

Those same principles apply here. It is public knowledge that Dir. Patel lived and worked in Nevada at the time of Defendant's statements. The Foundation has its principal place of business in Nevada. Compl. ¶ 9. Defendant would certainly be aware of these facts, given his long-running campaign against Dir. Patel. Defendant also directed activities at Nevada itself. Specifically, Defendant maintained a personal crusade against individuals whom he believes disputed election results in Nevada in 2020. These individuals include Dir. Patel and, relatedly, Lt. General Michael T. Flynn, U.S. Army (ret.)

("General Flynn"). This crusade directly affected both Nevada and Dir. Patel. For example, on August 23, 2021, Defendant criticized Caesar's Palace on X because the casino was set to host the "God & Country Patriot Double Down."[1] That event was ultimately canceled when Caesar's Palace declined to host the event.[2] Shortly before the current litigation began, Defendant widened his net in Nevada to include Dir. Patel's counsel Jesse Binnall, calling Mr. Binnall "Trump's top election fraud lawyer," and stating that he found "it very interesting that Jesse Binnall is also the lawyer suing me for [General Flynn]."[3] This diatribe continued after the initial complaint in this case was filed. On July 18, Defendant claimed that Mr. Binnall "had fake electors in Nevada trade for immunity to FLIP ON HIM TO JACK SMITH. hahahahaha."[4]

Defendant's vendetta against General Flynn and anyone associating with him—including Dir. Patel and his lawyers—for their activities in Nevada, provides essential context as to why Defendant sought so vigorously to defame Dir. Patel. It is particularly relevant that in the X post referenced in the Complaint, Defendant accused Dir. Patel of being "a Kremlin asset working for Mike Flynn and Devin Nunes since 2016." Compl. at ¶ 43. Critically, in many of Defendant's posts, he even specifically tagged Dir. Patel in the post to ensure that Dir. Patel would see the posts and that others would associate them with Dir. Patel. This conduct constituted "something more," removing the analysis from maintenance of a public site to activities directed at the forum. *See Rio Properties*, 284 F.3d at 1020.

Third, typically, when a plaintiff can satisfy the "express aiming" requirement, the foreseeability of harm requirement will also be satisfied. *See, e.g., Panavision*, 141 F.3d at 1322; *Rio Properties*, 284 F.3d at 1020. Defendant intended that Plaintiffs suffer harm in Nevada through his repeated defamatory

---

[1] Jim Stewartson (@JimStewartson) X (Aug. 23, 2021, 11:41 AM) https://x.com/jimstewartson/status/1429831083391012867.

[2] *See* Eliza Relman, *Caesars Entertainment cancels a QAnon conference featuring Michael Flynn at its Las Vegas venue*, BUSINESS INSIDER (Sep. 1, 2021) https://www.businessinsider.com/caesars-cancels-a-major-qanon-conference-at-its-las-vegas-venue-2021-9.

[3] Jim Stewartson (@JimStewartson) X (May 18, 2023, 12:07 PM) https://x.com/jimstewartson/status/1659229341471985675.

[4] Jim Stewartson (@JimStewartson) X (Jul. 18, 2023, 5:49 PM) https://x.com/jimstewartson/status/1681420853748334592.

statements, and Plaintiffs did suffer harm. Compl. ¶¶ 12, 46, 66, 67; *see also Panavision*, 141 F.3d at 1322 (finding the defendant aimed his statements at California and knew the harm would be felt there because the plaintiff had its principal place of business in California). Dir. Patel was a resident of Nevada before, during, and after Defendant's defamatory statements, and he suffered harm in Nevada because of Defendant's statements—the inevitable result of being defamed in Nevada. Residents of Nevada did, in fact, view the defamatory statements. Compl. ¶ 46.

In sum, Defendant committed an intentional act, defaming Dir. Patel, and aimed those statements at him in Nevada. Because these statements caused reasonably foreseeable harm to Dir. Patel in Nevada, the first element is satisfied.

### 2. The claim arises from Defendant's Nevada-related activities.

To establish personal jurisdiction, the claim at issue must arise from Defendant's activities related to the forum. This requirement is satisfied "if 'but for' the contacts between the defendant and the forum state, the cause of action would not have arisen." *Terracom v. Valley Nat'l Bank*, 49 F.3d 555, 561 (9th Cir. 1995) (citing *Shute v. Carnival Cruise* Lines, 897 F.2d 377, 385 (9th Cir. 1990)). That standard is easily met. This case is based entirely on Defendant's statements that caused Plaintiffs' harm in Nevada.

### 3. It is reasonable for the Court to exercise personal jurisdiction.

To determine whether personal jurisdiction is reasonable, this Circuit looks to seven factors: "(1) the extent of the defendants' purposeful interjection into the forum state's affairs; (2) the burden on the defendant of defending in the forum; (3) the extent of conflict with the sovereignty of the defendants' state; (4) the forum state's interest in adjudicating the dispute; (5) the most efficient judicial resolution of the controversy; (6) the importance of the forum to the plaintiff's interest in convenient and effective relief; and (7) the existence of an alternative forum." *Caruth*, 59 F.3d at 128 (quoting *Core-Vent Corp. v. Nobel Indus. AB*, 11 F.3d 1482, 1485, 1487-88 (9th Cir. 1993)). Each of these factors weighs in Plaintiffs' favor or, at worst, is neutral.

*First*, Defendant purposefully injected himself into Nevada, as illustrated above in the discussion of purposeful direction. In *Panavision*, knowing where the harm would be felt was sufficient to satisfy this

factor. *Panavision*, 141 F.3d at 1323. Here, Defendant made his statements knowing full well that Plaintiffs would be harmed in Nevada. This factor weighs in favor of Plaintiffs.

*Second*, Defendant would face minimal burden in defending here. Defendant resides in neighboring California, and Defendant has been fundraising on his social media for this very action. *See* ECF 30 at 16. This factor weighs in favor of Plaintiffs.

*Third*, there is no conflict with the sovereignty of California. Each state is bound by the same Supreme Court precedent in analyzing Plaintiffs' claims under the First Amendment. Minimally, this factor is neutral.

*Fourth*, "[Nevada] has a strong interest in protecting its residents from torts that cause injury within the state, and in providing a forum for relief." *Brainerd v. Governors of the Univ. of Alberta*, 873 F.2d 1257, 1260 (9th Cir. 1989). This factor weighs in favor of reasonableness.

*Fifth*, jurisdiction would be most efficient in Nevada. "In evaluating this factor, [courts look] primarily at where the witnesses and the evidence are likely to be located." *Menken v. Emm*, 503 F.3d 1050, 1060-61 (9th Cir. 2007) (quoting *Core-Vent Corp.*, 11 F.3d at 1489). Any evidence concerning Plaintiffs' damages would be located in Nevada, where Plaintiffs were harmed when Defendant made his defamatory statements. This factor weighs heavily in Plaintiffs' favor.

*Sixth*, jurisdiction in Nevada would afford Plaintiffs the most convenient and efficient way to obtain relief. Despite frequently posting about this litigation on social media, Defendant for two years refused to appear in this action. It would be immensely unfair to require Plaintiffs to seek relief elsewhere when Defendant has willfully sought to obstruct the proceedings. This is especially true because, now, many of the statements in the Complaint would be time-barred. This factor weighs in Plaintiffs' favor.

*Seventh*, while California could be an alternate forum, Plaintiffs should not be forced to jump through additional hoops for a Defendant who has shown clear intent to obstruct this case. Defendant was served over two years prior to his participating in this case at all, despite frequently posting about the case, mocking Plaintiffs, ever since the case's inception. Minimally, this factor is neutral.

Importantly, not all factors need to weigh in Plaintiffs' favor for this Court to find it reasonable to exercise jurisdiction over Defendant. *See Panavision*, 141 F.3d at 1324. Here, where all factors either weigh in Plaintiffs' favor or are neutral, the exercise of personal jurisdiction would be more than reasonable.

It is more than reasonable to exercise personal jurisdiction in this case. Both before and during this litigation, Defendant has repeatedly thumbed his nose at Nevada and the Court. Defendant attempted to influence events in Nevada prior to this suit. He demonized a profitable Nevada business, Caesar's Palace, for being willing to do business with Defendant's perceived enemies. Defendant harassed and defamed Dir. Patel, a Nevada resident, from his presumed jurisdictional safety in California. Long-arm statutes such as Nevada's exist precisely to counter such evasive behavior.

Defendant knows this and understands that he is liable in Nevada. This is evident from his post on X on August 20, 2025, which said, "Googly-eyed Kremlin bitch @FBIDirectorKash will have to come back to Nevada for the trial where I explain in full detail to the judge why I was dead serious when I said he's a 'chud.'"[5] Defendant has since deleted this post, likely to avoid personal jurisdiction. Its existence, however, suggests that Defendant recognizes the Court's jurisdiction over him in this matter and is actively attempting to avoid the consequences of the actions he directed at Nevada. He should not be allowed to backpedal now that he desires to hide from his previous statements.

In sum, although Defendant bears the burden of disproving personal jurisdiction, Plaintiffs have independently established that all three prongs of the minimum contacts inquiry are satisfied and that the exercise of jurisdiction is reasonable. This Court has personal jurisdiction over Defendant. Defendant cannot meet his burden.

---

[5] Jim Stewartson (@JimStewartson) X (Aug. 20, 2025, 8:19 P.M) https://x.com/jimstewartson/status/1826389960932589973.

- 8 -

### III. The Court Should Impose Attorney's Fees and Require Defendant to Post a Bond as a Condition to Vacate the Judgment.

Defendant's evasion tactics in this case have cost Plaintiff significant time and resources. When a defendant engages in such behavior, the Court is empowered to levy a wide variety of sanctions against Defendant to ensure compliance. *See Nilsson, Robbins, Dalgarn, Berliner, Carson & Wurst v. Louisiana Hydrolec*, 854 F.2d 1538, 1546–47 (9th Cir. 1988). The most common sanction imposed by courts is to impose attorney fees and a bond. *See id.* If the Court is inclined to set aside the judgment, the Court should, therefore, exercise this authority and award Plaintiffs their reasonable attorney's fees incurred since the Court entered default judgment and require Defendant to post a bond as a condition for vacating the default judgment.

The Ninth Circuit has consistently held that trial courts have discretion to reasonably condition the setting-aside of a default judgment. In *Louisiana Hydrolec*, the Ninth Circuit held "that it is appropriate to condition setting aside a default upon the payment of a sanction." 854 F.2d at 1546–47. Attorney's fees are appropriate because Defendant knowingly and willfully refused to engage with this litigation. This conduct caused Plaintiff to incur dramatically increased costs than they otherwise would have. Since the Court entered the final default judgment order on August 5, 2025, Plaintiffs have incurred $45,640 in attorney's fees. *See* Declaration of Jared J. Roberts. While Plaintiffs believe these fees and costs are reasonable, Plaintiffs reserve the right to brief on the issue of their reasonableness. In sum, but for Defendant's lack of cooperation, these expenses would have been unnecessary; therefore, it is reasonable to award Plaintiffs his attorney's fees and costs tethered to Defendant's default.

Furthermore, the imposition of a bond is appropriate. *Louisiana Hydrolec* further stated that "[i]n some cases, it may also be appropriate for the defendant to be required to post bond to secure the amount of the default judgment pending a trial on the merits. *Id.* at 1546 (citing *Thorpe v. Thorpe*, 364 F.2d 692, 694 (D.C. Cir. 1966)). In *Hunter v. TBDC, LLC*, the District of Northern California suggested that circumstances such as a defendant's inability to pay the judgment amount or risk that a defendant may

conceal or dissipate assets may justify the imposition of a bond. *Hunter*, No. C–08–4158, 2009 WL 224958, at *7 (N.D. Cal. Jan. 29, 2009).

Accordingly, in further consideration of Defendant's uncooperativeness in this litigation, if the Court decides to set aside the default judgment, it should condition this action upon Defendant's payment of a bond in the amount owed under the judgment: $250,000. A bond in this instance is necessary to ensure Plaintiffs' payment of their attorney's fees, and also, in the event Plaintiffs appealed any ruling that the Court lacked personal jurisdiction and were successful, a bond would secure the amount of the default judgment that would then be owed. This is further necessary because there is significant reason to doubt that Defendant has assets sufficient to satisfy this judgment. As recently as April 17, 2026, Defendant described himself as a "broke blogger."[6] Similar posts began at least as early as 2023.[7] These circumstances justify the imposition of a bond as a condition of setting aside the Court's default judgment, to ensure payment of Plaintiffs' reasonable attorney's fees and costs.

## CONCLUSION

The plain language of Rule 60 is unambiguous: the moving party bears the burden to prove that there is an adequate basis for relief. As several pleadings have demonstrated, this Court has personal jurisdiction over Defendant. If the Court determines that there is good cause to set aside the default judgment against Defendant, Plaintiffs respectfully request that the Court award them their reasonable attorney's fees incurred since the date that the Court entered default judgment and condition the setting aside on payment of a bond.

DATED: May 4, 2026                                        Respectfully submitted,

---

[6] Jim Stewartson (@JimStewartson) X (Apr. 17, 2026, 8:17 P.M.) https://x.com/jimstewartson/status/2045295613483622815.
[7] Jim Stewartson (@JimStewartson) X (May 31, 2023, 7:48 P.M.) https://x.com/jimstewartson/status/1664056241986101250.

- 10 -

/s/ Jared J. Roberts

Jason C. Greaves *(pro hac vice)*
Jared J. Roberts *(pro hac* vice)
BINNALL LAW GROUP, PLLC
717 King Street, Suite 200
Alexandria, Virginia 22314
Phone: (703) 888-1943
Fax: (703) 888-1930
jason@binnall.com
jared@binnall.com

Adam R. Fulton
(Nev. Bar No. 11572)
JENNINGS & FULTON, LTD.
2580 Sorrel Street
Las Vegas, Nevada 89146
Phone: (702) 979-3565
Fax: (702) 362-2060
afulton@jfnvlaw.com


*Counsel for Plaintiffs*