MARGARET A. MCLETCHIE, Nevada Bar No. 10931
LEO S. WOLPERT, Nevada Bar No. 12658
**MCLETCHIE LAW**
602 South Tenth Street
Las Vegas, NV 89101
Telephone: (702) 728-5300; Fax: (702) 425-8220
Email: maggie@nvlitigation.com
*Counsel for Defendant Jim Stewartson*

## UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| KASHYAP P. PATEL, individually and on behalf of the KASH FOUNDATION, INC., the KASH FOUNDATION, INC. an Idaho Corporation,<br><br>          Plaintiffs,<br><br>    vs.<br><br>JIM STEWARTSON, an individual,<br><br>          Defendant. | **Case. No.: 2:23-cv-873-APG-NJK**<br><br>**DEFENDANT JIM STEWARTSON'S SUPPLEMENTAL BRIEF (ECF NO. 53)** |

Defendant JIM STEWARTSON, by and through his counsel of record, hereby submits a supplemental brief in compliance with this Court's April 19, 2026, Order. (ECF No. 53.) This brief is supported by the attached memorandum of points of authorities, all exhibits and declarations submitted therewith, and any oral argument that the Court may entertain at hearing.

DATED this 4th day of May, 2026.

/s/ Leo S. Wolpert
Margaret A. McLetchie, Nevada Bar No. 10931
Leo S. Wolpert, Nevada Bar No. 12658
602 South Tenth Street
Las Vegas, NV 89101
Telephone: (702) 728-5300; Fax: (702) 425-8220
Email: maggie@nvlitigation.com
*Counsel for Defendant Jim Stewartson*

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.    INTRODUCTION**

In its April 19, 2026, Order, this Court denied Mr. Stewartson's motions to dismiss and vacate default judgment in part "because he had actual notice of the suit and the plaintiffs substantially complied with Rule 4 to effectuate service." (ECF No. 53, p. 1:17-18.) To be clear, although Mr. Stewartson knew of the instant lawsuit, he maintains that he was never personally served[1]; he thus believed that he was not required to appear. (Stewartson Decl., ¶¶ 3-5.) Had he been personally served, he would have responded and actively defended himself—as he successfully did when Michael Flynn haled him into Florida court to punish him for similar social media speech.[2] Here, upon learning that a default judgment was entered against him on August 5, 2025, Mr. Stewartson quickly retained counsel (Stewartson Decl., ¶ 11.) Only 31 days after entry of default judgment—21 days after learning of its existence—Mr. Stewartson moved to vacate it pursuant to FRCP 60(b)[3] and dismiss the suit based on *inter alia*, this Court's lack of personal jurisdiction over him under FRCP 12(b)(2) and the default judgment's severe impingement on his First Amendment rights. (*See generally* ECF Nos. 42-43 [motions]; ECF No. 52 [reply].)

The Court ordered "supplemental briefing on the issues of (1) which party bears the burden to prove whether minimum contacts exist on a motion to set aside a default judgment for lack of personal jurisdiction; (2) whether Stewartson had minimum contacts with Nevada to support personal jurisdiction in this case; and (3) what penalty, if any, should be entered against Stewartson if [the Court sets] aside the default judgment." (ECF No. 53, p. 1:19-23.)

---

[1] Addressing the Order's contentions (at p. 4:7-14), Mr. Stewartson denies that he was the person whom Plaintiffs attempted to serve on June 15, 2023, and that he obtained knowledge of the lawsuit by means other than the Plaintiffs' June 15, 2023, service attempt, specifically via third party social media posts. (Stewartson Decl., ¶ 4.)

[2] *See generally Flynn v. Wilson*, 398 So. 3d 1103 (Fla. Dist. Ct. App. 2024), *review denied*, No. SC2025-0065, 2025 WL 1009410 (Fla. Apr. 2, 2025) (affirming anti-SLAPP dismissal of claims stemming from, *inter alia*, Mr. Stewartson's tweet that Mr. Flynn was "Q"). (S*ee also* Stewartson Decl., ¶¶ 6-8.)

[3] Although the Court cabined its analysis to FRCP 60(b)(4), Mr. Stewartson also moved for the default judgment to be set aside under, *inter alia*, FRCP 60(b)(1).

MCLETCHIE LAW
ATTORNEYS AT LAW
602 SOUTH TENTH ST.
LAS VEGAS, NV 89101
(702)728-5300 (T) / (702)425-8220 (F)
WWW.NVLITIGATION.COM

Though courts are divided regarding these three issues, due process and the strong preference for resolving cases on their merits in an adversarial proceeding militate toward resolving these issues in favor of Mr. Stewartson. As argued below, (1) Plaintiffs should bear the burden of proving whether Mr. Stewartson had minimum contacts with Nevada, notwithstanding entry of default judgment; (2) Regardless of who bears the burden, Mr. Stewartson did not have minimum contacts with Nevada to support personal jurisdiction in this case; and (3) No penalty—or at most a minimal penalty—should be imposed upon Mr. Stewartson, as he raises ample meritorious defenses and Plaintiffs cannot demonstrate any prejudice—other than being stripped of a windfall judgment and being forced to litigate their claims on their "merits"—which is not sufficient to deny vacatur of the default judgment.

## II.    LEGAL PRINCIPLES AND CONTEXT

FRCP 60 provides for relief from judgment on "just terms" on several possible grounds. The rule "is meant to be remedial in nature and therefore must be liberally applied" because "judgment by default is a drastic step appropriate only in extreme circumstances; a case should, whenever possible, be decided on the merits." *MetroPCS v. A2Z Connection, LLC*, No. 2:15-cv-01412-JAD-CWH, 2018 WL 3785384, at *1 (D. Nev. Aug. 9, 2018) (quoting *Falk v. Allen*, 739 F.2d 461, 463 (9th Cir. 1984)).[4] The Court should heed these principles here, especially because free speech is implicated. Thus, even if Plaintiffs substantially complied with California's rules governing service, the judgment should be set aside pursuant to FRCP 60(b) so that Mr. Stewartson can defend himself.

Mr. Stewartson acknowledges that when ruling on his request to set aside the judgment as void for lack of personal jurisdiction pursuant to FRCP 60(b)(4), the Court does not have its "normal discretion to grant or deny the motion and, therefore, consideration of the merits of the defense, prejudice, or culpability [is] not proper." (ECF No. 53, p. 3:6-9 (quoting *S.E.C. v. Internet Sols. for Bus. Inc.*, 509 F.3d 1161, 1165 (9th Cir. 2007) and citing *MetroPCS*, 2018 WL 3785384, at *5.) However, as one legal commentator argues, a case's

---

[4] Mr. Stewartson also moved for the default judgment to be set aside under Rule 60(b)(1); even if he was served and even if this Court had personal jurisdiction over him, the *Falk* analysis supports resolving this matter on the merits.

MCLETCHIE LAW
ATTORNEYS AT LAW
602 SOUTH TENTH ST.
LAS VEGAS, NV 89101
(702)728-5300 (T) / (702)425-8220 (F)
WWW.NVLITIGATION.COM

2

underlying merits are inextricable from the personal jurisdiction determination, as courts determining personal jurisdiction make "implicit assumptions about the underlying merits of the cases," *i.e.*:

> When a court is willing to accept the plaintiff's allegations as true, it is likely to find that jurisdiction is appropriate based on the defendant's "express aiming" of tortious conduct directed at the forum. When a court is unwilling to accept the plaintiff's allegations of tortious conduct as true, it is less likely to find jurisdiction appropriate; because there is no finding of tortious conduct, there can be no finding of express aiming.

Cassandra Burke Robertson, *The Inextricable Merits Problem in Personal Jurisdiction*, 45 U.C. Davis L. Rev. 1301, 1356 (2012). This commentator concluded that a narrow application of the effects-test is superior as a broader standard can "cause defendants to forfeit the very interests that the personal jurisdiction doctrine is meant to protect" and "increase the cost of forum selection for both parties, ***inhibit legitimate speech***, and potentially disrupt the growth of online commercial activity." *Id.* at 1356-57 (emphasis added). Since that article was written, the Supreme Court has indeed narrowed the effects test as reflected in *Walden* and its progeny.

Here, when entering default, the Court was forced to accept Plaintiffs' factual allegations (except regarding damages) as true. (*See* ECF No. 40, p. 1:13-15 (quoting *Geddes v. United Fin. Grp.*, 559 F.2d 557, 560 (9th Cir. 1977).) Thus—despite noting America's "profound national commitment to the principle that debate on public issues should be uninhibited, robust, and wide-open, and that it may well include vehement, caustic, and sometimes unpleasantly sharp attacks on government and public officials" (*Id.* at p. 3:10-13 (quoting *New York Times Co. v. Sullivan*, 376 U.S. 254, 270 (1964))—in the absence of any defense, the Court was forced to accept Plaintiffs' allegations that Mr. Stewartson's speech was defamatory rather than speech protected by the First Amendment.

The Court expressed skepticism of Plaintiffs' alleged damages, noting that their motion offered "scant evidence of harm or damages to either plaintiff" and their expert report offered "only conclusory statements about reputational damage and lost Foundation donors, with almost no reference to specific instances to support those." (*Id.* at p. 1:19-22.) This

skepticism was well-warranted: as explained in Mr. Stewartson's Motions, Plaintiffs' claims are doomed to fail on their putative "merits." (*See* ECF No. 42, pp. 17:17 – 23:18.) Here, consideration of the merits cannot be divorced from the minimum contacts analysis, and as further argued below, the merits and the nature of this suit are also relevant to what penalty, if any, the Court should impose on Mr. Stewartson if it sets aside the default judgment.

**III.   LEGAL ARGUMENT**

    **A.   Plaintiffs Should Bear the Burden of Proving Minimum Contacts.**

The Court noted that circuit courts are divided on the issue of which party bears the burden of establishing minimum contacts pursuant to the *Calder-Walden* effects-test where the defendant had actual notice of the suit and did not defend against default judgment. (ECF No. 53, p. 7:11-14 (citing *Supastrip Inc. v. Hindustan Adhesives Ltd.*, No. 3:24-cv-765, 2026 WL 147011, at \*2-3 (E.D. Va. Jan. 20, 2026) (describing the circuit split and following the Seventh Circuit's ruling in *Bally Exp. Corp. v. Balicar*, 804 F.2d 398, 401 (7th Cir. 1986) to hold that "'[i]f the defendant, after receiving notice, chooses to let the case go to a default judgment, the defendant must then shoulder the burden of proof when the defendant decides to contest jurisdiction in a postjudgment rule 60(b)(4) motion'"); *Oldfield v. Pueblo De Bahia Lora, S.A.*, 558 F.3d 1210, 1218 (11th Cir. 2009) (placing the burden of proving minimum contacts on plaintiff and imposing no consequence on the defendant who had actual notice of the suit but nevertheless waited until after the court entered a default judgment to challenge personal jurisdiction).)

The better approach is to leave the burden on the plaintiff. As articulated in a 2001 law review comment, keeping the burden on the plaintiff to establish personal jurisdiction in the context of Rule 60 motions is the doctrinally superior approach "because it promotes horizontal consistency across analogous motions advanced under Rules 12, 55, and 60" and the normatively superior approach "because it provides notice, promotes efficiency, elicits information, and ensures fairness." Ariel Waldman, *Allocating the Burden of Proof in Rule 60(b)(4) Motions to Vacate A Default Judgment for Lack of Jurisdiction*, 68 U. Chi. L.Rev., 521, 549 (2001)). Conversely, placing the burden on defendants requires defendants to prove

MCLETCHIE LAW

ATTORNEYS AT LAW
602 SOUTH TENTH ST.
LAS VEGAS, NV 89101
(702)728-5300 (T) / (702)425-8220 (F)
WWW.NVLITIGATION.COM

the "negative proposition" that the court lacks jurisdiction, which courts and commentators have recognized as overly burdensome in other contexts. *Id.* at 546. Thus, requiring "plaintiffs to prove the positive proposition of valid jurisdiction is more likely to elicit the necessary information germane to determining the court's personal jurisdiction." *Id.*

Minimum contacts are sufficient to establish personal jurisdiction over a non-resident defendant where: (1) the non-resident defendant purposefully directs activities within the forum; (2) the claim arises out of the defendant's forum-related activities; and (3) the exercise of jurisdiction is reasonable. *Brayton Purcell LLP v. Recordon & Recordon*, 606 F.3d 1124, 1128 (9th Cir. 2010) (*overruled on other grounds by Axiom Foods, Inc. v. Acherchem Int'l, Inc.*, 874 F.3d 1064, 1069 (9th Cir. 2017)). The plaintiff has the burden of satisfying the first two prongs, and if successful, the burden shifts to the defendant to present a compelling case why jurisdiction would be unreasonable. *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 802 (9th Cir. 2004).

Keeping the burden on Plaintiffs is particularly important considering post-*Walden* precedent, which plainly forecloses Plaintiffs from exclusively relying upon their already-dubious "individualized targeting" theory—*i.e.*, Mr. Stewartson's purported knowledge that Plaintiffs are Nevada residents who will feel damages in Nevada—to establish minimum contacts. *See Axiom Foods, Inc.*, 874 F.3d at 1070 ("while a theory of individualized targeting may remain relevant to the minimum contacts inquiry, it will not, on its own, support the exercise of specific jurisdiction, absent compliance with what *Walden* requires."). Indeed, to establish minimum contacts in the post-*Walden* world, Plaintiffs must allege "something more" than mere knowledge that Plaintiffs live in the target forum. *See, e.g., Rye v. Equifax Info. Servs. LLC*, No. CV-25-02903-PHX-SPL, 2026 WL 878976, at *3 (D. Ariz. Mar. 31, 2026). Because the Plaintiffs must now provide the Court with "something more," shifting the burden to defendants puts defendants like Mr. Stewartson in the unfair position of being forced to prove the negative proposition that there is nothing more connecting them to the forum state than their (alleged) knowledge of Plaintiffs' state of citizenship. As this strikes at the very heart of *Walden*'s inquiry—"not where the plaintiff experienced a particular injury

MCLETCHIE LAW
ATTORNEYS AT LAW
602 SOUTH TENTH ST.
LAS VEGAS, NV 89101
(702)728-5300 (T) / (702)425-8220 (F)
WWW.NVLITIGATION.COM

or effect but whether the defendant's conduct connects him to the forum in a meaningful way" (*Walden*, 571 U.S. at 290)—the burden of establishing minimum contacts should remain on Plaintiffs.

### B. Regardless of Which Party Bears the Burden of Proof, Minimum Contacts Do Not Exist to Support Personal Jurisdiction.

Plaintiffs' arguments that this court has jurisdiction are premised on the allegations that "the defamatory statements were directed at a Nevada resident, and the effects of the statements were meant to be felt in Nevada." (ECF No. 8, ¶ 12.) As explained at length in Mr. Stewartson's Motions, the *Calder* effects test Plaintiffs rely on has been severely narrowed by subsequent Supreme Court decisions, and applied by several courts in this Circuit to find personal jurisdiction lacking in directly analogous situations. Plaintiffs have failed to do anything more than make dubious allegations that they suffered damages in Nevada, which is insufficient under current case law to establish that **Mr. Stewartson** had "minimum contacts" with Nevada. (*See* ECF No. 42, pp. 8:11 – 11:26.)

As noted above, it is more difficult for Mr. Stewartson to prove the negative proposition that he lacks minimum contacts with Nevada; however, he can do so in this instance. Before the instant lawsuit was filed, Mr. Stewartson was last in Nevada in 2016 to attend a UFC event. (Stewartson Decl., ¶ 12.) All of the allegedly defamatory statements giving rise to Plaintiffs' claims were posted by Mr. Stewartson from California. (Stewartson Decl., ¶ 13.) Mr. Stewartson did not care about Plaintiffs' alleged Nevada location or activities when criticizing their conduct on the national stage. (Stewartson Decl., ¶ 14.) Mr. Stewartson's alleged conduct—universally accessible social media posts about a world-famous political operative—did not intentionally target Nevada in ways that courts find give rise to minimum contacts. *Compare Mendoza v. Fenix Ammunition LLC*, No. 2:24-CV-1120-ODW (MRWX), 2024 WL 3464411, at *6 (C.D. Cal. July 18, 2024) (finding minimum contacts where defendant's "promotions relied on multiple events and circumstances unique to the California market that [defendant] leveraged to successfully generate sales.").

Regardless, courts in this circuit have found minimum contacts lacking in situations where, as here, plaintiffs could not demonstrate "something more" than defendants'

knowledge that plaintiff may suffer damages in the forum state. *See, e.g.*, *Van Hook v. Crete Carrier Corp.*, No. 1:24-CV-00617-BLW-REP, 2025 WL 1643098, at \*4–5 (D. Idaho June 10, 2025), report and recommendation adopted sub nom. *Van Hook v. Creete Carrier Corp.*, No. 1:24-CV-000617-BLW-REP, 2025 WL 2029915 (D. Idaho July 21, 2025) (Nebraska corporation's knowledge that plaintiff lived in Idaho insufficient to demonstrate corporation that employed and oversaw plaintiff in Wyoming and Utah had minimum contacts with Idaho); *X Corp. v. Ctr. for Countering Digital Hate Ltd.*, 724 F. Supp. 3d 921, 941 (N.D. Cal. 2024) ("alleged sharing of login information … [and] solicitation of donations from California donors" insufficient to establish minimum contacts).

Other courts have also found minimum contacts lacking in the instant context—attempting to hale a social media speaker defendant into the plaintiff's forum. In *Binion v. O'Neal*, Shaquille O'Neal posted a photo of himself mocking the plaintiff on social media. *Binion v. O'Neal*, 95 F. Supp. 3d 1055, 1058 (E.D. Mich. 2015). Although O'Neal had much greater contacts with Michigan than Stewartson had with Nevada—plaintiff alleged O'Neal organized "comedy performances at local theaters, owns restaurant franchises and other business interests in Michigan, and endorses or has endorsed many products that are distributed in Michigan"—the court held that the social media posts at issue were, like Mr. Stewartson's, "meant for a national or even international audience." *Id.* at 1060-61. The Court dismissed for lack of personal jurisdiction, concluding that plaintiff was "not injured by O'Neal's business dealings in [Michigan], and Plaintiff's cause of action is independent of any such business connection." *Id.* at 1061. Similarly, in *Ensing v. Sephora USA, Inc.*, No. 3:21-CV-00421, 2022 WL 4097712 (M.D. Tenn. Sept. 6, 2022), plaintiff alleged the cosmetics company Sephora defamed her by posting on its social media that it was severing ties with plaintiff for expressing pro-Trump views. *Id.* at \*1. The court held that Sephora lacked minimum contacts with Tennessee, even though plaintiff alleged: (1) she entered into a contract with Sephora for video creation while residing there; (2) she knew Tennessee residents read Sephora's statements; and (3) Sephora knew she lived there. *Id.* at \*3–4. These cases show courts have been loath to exercise personal jurisdiction in defamation cases even

MCLETCHIE LAW

ATTORNEYS AT LAW
602 SOUTH TENTH ST.
LAS VEGAS, NV 89101
(702)728-5300 (T) / (702)425-8220 (F)
WWW.NVLITIGATION.COM

where defendants had more connections with the forum state than Mr. Stewartson has with Nevada. This Court should follow suit and find minimum contacts lacking here.

### C.    Mr. Stewartson Should Suffer No Penalties.

The fact that Mr. Stewartson contests whether he was actually served and—consistent with that contention—acted quickly once he learned of the default judgment, weigh against penalties, as do the meritorious defenses Mr. Stewartson has against Plaintiffs' meritless claims targeting speech. As the Ninth Circuit explained, "if a defendant's conduct was not 'culpable,' then her failure to respond to a lawsuit is ordinarily 'excusable,' and in the interests of substantial justice the better course may well be to vacate the default judgment and decide the case on the merits." *TCI Grp. Life Ins. Plan v. Knebber*, 244 F.3d 691, 696–97 (9th Cir. 2001), *as amended on denial of reh'g and reh'g en banc* (May 9, 2001), overruled on other grounds by *Egelhoff v. Egelhoff ex rel. Breiner*, 532 U.S. 141 (2001).

This case is factually distinguishable from cases finding that culpable conduct \ supports maintaining default judgment or imposing sanctions if the default judgment is vacated. In those cases—unlike here—(1) service was not contested; and, (2) the defendants failed to answer despite being sophisticated parties with ample resources. *Cf. Castro v. C&C Verde LLC*, No. 23-15488, 2024 WL 5494392, at *1 (9th Cir. Mar. 28, 2025) (refusing to lift default where appellants, who had previously consulted with counsel in relation to similar litigation, were legally sophisticated parties who had constructive or actual notice of Castro's complaint and failed to answer); *Garner v. Wells Fargo Home Mortg., Inc.*, No. 1:10-CV-266-BLW, 2011 WL 2413841 (D. Idaho June 9, 2011) (conditioning vacatur of default against Wells Fargo on payment of plaintiff's attorney's fees where Wells Fargo, a legally sophisticated entity represented by counsel, failed to answer despite not contesting service). Mr. Stewartson's lack of legal sophistication militates against imposing penalties. *See Lakeview Cheese Co., LLC v. Nelson-Ricks Creamery Co.*, 296 F.R.D. 649, 655 (D. Idaho 2013) (declining to impose fees as condition of setting aside default where defendant "was not an attorney, and was not represented by an attorney" before default was entered).

This case stands in stark contrast to cases where courts have found prejudice

8

sufficient to deny vacating a default judgment or to require a penalty. There would be no second trial, collateral issues, or remaining parties. *Compare In re 45 John Lofts, LLC*, 648 B.R. 16, 29 (Bankr. S.D.N.Y. 2023) (finding prejudice to non-defaulting party where the "delay in finalizing the administration of the estate and would not avoid the additional costs to the Debtor from a second trial on substantially related issues to the already completed trial of the remaining defendants"). Plaintiffs delayed prosecuting this matter, indicating little urgency. (*See* ECF No. 29 [Order to Show Cause re Dismissal for Want of Prosecution] at 1:9-10 ("The plaintiffs have taken no action to prosecute this case since obtaining a clerk's entry of default in December 2023."). *Compare TCI*, 244 F.3d at 697 (noting "if reopening the judgment would actually prejudice the plaintiff who has diligently pursued her claim, then the interest in finality should prevail.").

The First Amendment context also militates against a penalty. Defamation suits by officials against private citizens target speech that falls as the zenith of First Amendment protection. As judges throughout the nation have noted, political figures "often need thick skins when obtaining and holding public office … public officials know what they are getting into when elected or appointed to serve the public." *Ramler v. Birkenhauer*, 684 S.W.3d 708, 724 (Ky. Ct. App. 2024).[5,6]

## IV.   CONCLUSION

Rather than accept that along with power comes criticism, Mr. Patel has responded

---

[5] *See also Berkey v. Delia*, 287 Md. 302, 341–42, 413 A.2d 170, 189 (1980) (Eldridge, J., dissenting) ("If the government itself can decide which criticisms it will tolerate and which it will not, by its courts freely allowing government officials to bring defamation actions against citizens expressing grievances, then an essential aspect of our freedom is impaired."); *Logue v. Book*, 297 So. 3d 605, 619 (Fla. Dist. Ct. App. 2020) ("the Constitution requires that public figures, including both elected and non-elected officials, have thicker skin in their response to insults or republication of unfavorable news articles by political gadflies when they choose—voluntarily—to enter the public arena").

[6] While the First Amendment issues weigh against a penalty even if Mr. Stewartson were not entitled to anti-SLAPP relief, it is notable that, under either Nevada law or California law, Mr. Stewartson is entitled to file an anti-SLAPP motion to protect against Patel's claims—and would be entitled to fees and costs if he prevailed. *See* NRS 41.670(1); Cal. Civ. Proc. Code § 425.16(c). Nevada law provides such speakers immunity from suit. *See* NRS 41.650.

to criticism by launching a series of baseless lawsuits to silence his critics.[7] This case reflects a transparent effort to leverage superior resources to silence Mr. Stewartson via litigation brough in a jurisdiction with which Mr. Stewartson lacks any, let alone minimum, contacts.[8] While Plaintiffs may have substantially complied, they did not actually serve Mr. Stewartson before this Court entered a significant default judgment that would not only punish Mr. Stewartson financially but would further Plaintiffs' improper effort to enlist the Courts to silence their critics. While Mr. Stewartson decided not to act when he was unaware that technical service had been effectuated until he realized the Court was exercising jurisdiction over him by dint of the default judgment, was not a sign of disrespect toward the Court or an effort to delay but rather a rational decision while he was trying to defend himself against a parallel suit by an ally of Patel. (Stewartson Decl., ¶ 9.) These facts undercut a penalty.

Default judgments in defamation cases by government officials serve to silence private citizens who often lack the same resources as the officials they criticize. Here, Mr. Stewartson should be permitted to at least fight this case on the merit—free of burden shifting that would only incentivize forum shopping and free of sanctions.

DATED this 4th day of May, 2026

/s/ Leo S. Wolpert
MARGARET A. MCLETCHIE, Nevada Bar No. 10931
LEO S. WOLPERT, Nevada Bar No. 12658

---

[7] *See, e.g.*, Tom Winter, NBC News, April 22, 2026, *Judge tosses Kash Patel's defamation suit against former MSNBC contributor Frank Figliuzzi*, available at https://www.nbcnews.com/politics/justice-department/judge-tosses-kash-patels-defamation-suit-former-msnbc-contributor-rcna341458; Fabio Bertoni, The New Yorker, April 27, 2026, *Kash Patel's Implausible Lawsuit Against the Atlantic*, available at https://www.newyorker.com/news/the-lede/kash-patels-implausible-lawsuit-against-the-atlantic.

[8] But for Mr. Stewartson's lack of actual service and his unintentional failure to defend against the suit, for the reasons set forth in the Motions, Patel's complaint against him should have met the same fate as his complaint against MSNBC commentator Frank Figliuzzi—dismissal with prejudice. *See Patel v. Figliuzzi*, No. 4:25-CV-02548, 2026 WL 1097758, at *5 (S.D. Tex. Apr. 21, 2026)

MCLETCHIE LAW
ATTORNEYS AT LAW
602 SOUTH TENTH ST.
LAS VEGAS, NV 89101
(702)728-5300 (T) / (702)425-8220 (F)
WWW.NVLITIGATION.COM

| INDEX OF EXHIBITS TO SUPPLEMENTAL BRIEF | |
|---|---|
| **EX.** | **DESCRIPTION** |
| n/a | Supplemental Declaration of Jim Stewartson |
| | |