ADAM R. FULTON
Nev. Bar No. 11572
JENNINGS & FULTON, LTD.
2580 Sorrel Street
Las Vegas, Nevada 89146
Phone: (702) 979-3565
Fax: (702) 362-2060
afulton@jfnvlaw.com

JASON C. GREAVES (*pro hac vice*)
JARED J. ROBERTS (*pro hac vice*)
BINNALL LAW GROUP, PLLC
717 King Street, Suite 200
Alexandria, Virginia 22314
Tel: (703) 888-1943
Fax: (703) 888-1930
jason@binnall.com
jared@binnall.com

*Attorneys for Plaintiffs*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEVADA – LAS VEGAS DIVISION

KASHYAP PATEL *et al.*,

    Plaintiffs,

v.

JIM STEWARTSON,

    Defendant.

)
)
)
)
)
)
)
)
)
)
)
)
)

Case No.: 2:23-cv-873-APG-NJK

**PLAINTIFFS' RESPONSE TO DEFENDANT'S SUPPLEMENTAL BRIEF IN RESPONSE TO THE COURT'S ORDER OF APRIL 19, 2026**

Plaintiffs, Kashyap Patel and Kash Foundation Inc., by and through counsel, hereby submits their response to Defendant's supplemental brief in response the Court's April 19, 2026, Order, ECF 53, requesting additional briefing. This response is supported by the attached memorandum of points and authorities, all exhibits and declarations submitted therewith, and any oral argument that the Court may entertain at hearing.

- 1 -

/s/ Jared J. Roberts

Jason C. Greaves *(pro hac vice)*
Jared J. Roberts *(pro hac* vice)
BINNALL LAW GROUP, PLLC
717 King Street, Suite 200
Alexandria, Virginia 22314
Phone: (703) 888-1943
Fax: (703) 888-1930
jason@binnall.com
jared@binnall.com

Adam R. Fulton
(Nev. Bar No. 11572)
JENNINGS & FULTON, LTD.
2580 Sorrel Street
Las Vegas, Nevada 89146
Phone: (702) 979-3565
Fax: (702) 362-2060
afulton@jfnvlaw.com

*Counsel for Plaintiffs*

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.    Defendant Must Prove Lack of Personal Jurisdiction.

Defendant's conduct confirms precisely why the Ninth Circuit places the burden on a post-default movant challenging personal jurisdiction under Rule 60(b)(4): Defendant consciously elected not to appear, publicly discussed this litigation for years, mocked Plaintiffs online, fundraised off the case, and only sought relief after judgment was entered against him.

Rather than engage with the on-point Ninth Circuit holdings in *Cassidy v. Tenorio*, 856 F.2d 1412, 1415 (9th Cir. 1988) and *SEC v. Internet Solutions for Business Inc.*, 509 F.3d 1161, 1163 (9th Cir. 2007), Defendant largely relies on policy arguments contained in law review articles. *See* Dkt. No. 55. The law in this Circuit, however, is clear: a defendant with actual notice, who strategically defaults, bears the burden to demonstrate entitlement to Rule 60(b)(4) relief.

Defendant's heavy reliance on *Oldfield v. Pueblo De Bahia Lora, S.A.*, 558 F.3d 1210 (11th Cir. 2009), is misplaced. *Oldfield* is an Eleventh Circuit case that merely recites the general rule that the plaintiff bears the ultimate burden of establishing personal jurisdiction when it is challenged. *Id.* at 1217-18. It does not address, nor displace, the policy considerations the Ninth Circuit discussed in *Internet Solutions* regarding principles of fairness in imposing the burden on the defendant. *Internet Solutions*, 509 F.3d at 1166.

Similarly, Defendant leans on a 2001 law-review article in support of several policy arguments in support of the proposition that the plaintiff should always bear the burden. But the Ninth Circuit already weighed those policy considerations and reached the opposite conclusion—after the article was published. *Id.* at 1165-66. To require Plaintiffs to reconstruct jurisdictional evidence years after a defendant has intentionally defaulted, publicly mocked the case, and profited from it would reward precisely the strategic evasion that Rule 60(b)(4) is designed to deter. The rule is not intended to give litigants a risk-free opportunity to ignore federal litigation and later demand a complete reset once an adverse judgment is entered. *See id.* Defendant's conduct in this case is a textbook illustration of why he should bear the burden.

## II.    Defendant Cannot Prove That He Did Not Have Minimum Contacts.

Defendant has a high burden on his motion. As one of the articles Defendant cites noted, "in over 90 percent of the reported cases where courts have ruled on Rule 60(b)(4) motions to void a default judgment for lack of personal jurisdiction, the party bearing the burden of proof has lost." Ariel Waldman, *Allocating the Burden of Proof in Rule 60(b)(4) Motions to Vacate A Default Judgment for Lack of Jurisdiction*, 68 U. CHI. L. REV. 521 (2001). Defendant cannot—and has not—met that burden.

To meet his burden, Defendant simply relies on a self-serving declaration, much of which has no bearing on the issues before the Court on this supplemental briefing. The only statements that Defendant makes that touch on the current issues in this case are that he allegedly has not been to Nevada since 2016, that he made the subject posts from California, and he did not care about Plaintiffs' connections to Nevada. Dkt. No. 55.1 at ¶¶ 12–14.

The substantive record, however, amply supports this Court's jurisdiction, and that Defendant did, in fact, "care" about Nevada. "After entry of default, the complaint's factual allegations are taken as true, except those relating to damages." *LHF Productions, Inc. v. Boughton*, 299 F. Supp. 3d 1104, 1112–13 (D. Nev. 2017) (citing *TeleVideo Sys., Inc. v. Heidenthal*, 826 F.2d 915, 917–18 (9th Cir. 1987) (per curiam); Fed. R. Civ. P. 8(b)(6)). Defendant directed defamatory statements at Dir. Patel, a Nevada resident and founder of the Kash Foundation. Coml. ¶ 63. These statements caused Dir. Patel harm in Nevada. *Id.* at ¶ 66. And Defendant's followers in Nevada viewed the posts. *Id.* at ¶ 46. Accepting these facts as true, along with Defendant's additional Nevada-related posts previously cited, *see* Dkt. No. 54, injecting himself into Nevada's political atmosphere, establishes sufficient minimum contacts.

None of Defendant's cited cases change this conclusion. Defendant misreads his principal case, *Walden v. Fiore,* 571 U.S. 277, 284–85 (2014), and cites other authorities with facts distinctly at odds with the present litigation.

Defendant misreads *Walden. Walden* does not, as Defendant claims, "foreclose[]" jurisdiction any time that a Defendant "targets" a Plaintiff's home state. *See* Dkt. No. 55 at 5–6. Rather, *Walden* requires that the defendant himself create meaningful connections with the forum. 571 U.S. at 284–85. *Walden* dealt with a defendant who never mentioned Nevada in any context, whether in the litigation or outside. *See id.* at 288–89. The defendant in *Walden* was a federal agent who questioned plaintiffs in Georgia, seized

the plaintiff's property in Georgia, and filed a probable cause affidavit in Georgia. *Id.* It was this total isolation that the Court held barred personal jurisdiction, not the disputed fact that the defendant intended harm in Nevada. *Id.* at 289–90. In *Burri Law PA v. Skurla*, the Ninth Circuit reiterated that a defendant's targeting of a forum remains relevant under *Walden* when it informs a defendant's actions and connections with the forum. 35 F.4th 1207, 1214 (9th Cir. 2022). In that case, the Ninth Circuit held that personal jurisdiction was appropriate because the defendant made "allegedly defamatory communications—including phone calls and written correspondence—were sent to Arizona, circulated within Arizona, and had an Arizona "focus," as they concerned [plaintiff's] activities in Arizona." *Id.* at 1214–15.

Defendant's conduct here closely mirrors the conduct outlined in *Skurla*. Like the defendant in that case, Defendant deliberately injected himself into Nevada-centered political controversies and targeted Nevada residents in connection with Nevada activities. *See id.* Of particular note is Defendant's specific "tagging" of Nevada residents. This action transforms the maintenance of a passive website that might not satisfy due process into a deliberate "targeting" action. The act of "tagging" a person on social media ensures that *specific* tagged people will see the post. This makes a generalized post more analogous to the phone calls and written correspondence that the Ninth Circuit found dispositive in *Skurla*. *See Skurla*, 35 F.4th at 1214–15. Defendant himself understands that his contact with Nevada subjects him to personal jurisdiction in Nevada. As Plaintiffs previously noted, Defendant posted in August 2025 that Dir. Patel "will have to come back to Nevada for the trial."[1] That statement demonstrates Defendant's understanding that this litigation—and his conduct giving rise to it—was connected to Nevada, and that Defendant has subjected himself to personal jurisdiction in Nevada. As *Walden* requires, Defendant formed meaningful connections with the forum beyond his generalized commentaries about national politics. *See Walden*, 571 U.S. at 284–85. No amount of post-hoc backpedaling should absolve Defendant of liability after he has so purposefully kicked up controversy in Nevada.

Rather than recognize or confront the binding authorities in this Circuit, Defendant went outside this District in search of cherry-picked authority. Neither of the two principal out-of-district cases cited

---

[1] Jim Stewartson (@JimStewartson) X (Aug. 20, 2025, 8:19 P.M.), https://x.com/jimstewartson/status/1826389960932589973.

by Defendant is persuasive. In *Binion v. O'Neal*, the Eastern District of Michigan found no forum-directed conduct because the challenged social media content lacked any meaningful connection to Michigan itself. 95 F. Supp. 3d 1055, 1060 (E.D. Mich. 2015). A Federal District Court in Michigan found that maintenance of a "passive website" that is accessible in a forum is not, on its own, grounds for personal jurisdiction. *See id.* Likewise, *Ensing v. Sephora USA, Inc.*, involved corporate social media statements lacking forum-specific targeting. No. 3:21-cv-00421, 2022 WL 4097712, 2022 U.S. Dist. LEXIS 161222 (M.D. Tenn. Sept. 6, 2022). Plaintiff here has never claimed that Defendant is subject to specific personal jurisdiction in Nevada solely because he posted about a Nevada resident on X. Rather, Plaintiff has consistently claimed that Defendant repeatedly involved himself in Nevada election controversies and targeted Nevada residents regarding Nevada-centered conduct.  Whereas the above-cited cases deal with generalized statements to a national audience, Defendant here was keenly interested in the political fallout of the 2020 Presidential election in Nevada. More importantly, these authorities are nonbinding decisions from other district courts that cannot overcome binding Ninth Circuit precedent such as *Calder*, *Panavision Int'l*, and *Dole Food.*

### III.    Fees Remain Appropriate as a Condition to Any Setting Aside Default.

Defendant's argument ignores the prejudice that Plaintiffs have suffered as a result of his conduct. Specifically, incurring additional fees that they would not have otherwise incurred.

As the Ninth Circuit made clear, the purpose of conditioning the setting aside of default is to remedy any prejudice to the plaintiff. *Nilsson, Robbins, Dalgarn, Berliner, Carson & Wurst v. Louisiana Hydrolec*, 854 F.2d 1538, 1546 (9th Cir. 1988) (citing 10 C. Wright, A. Miller & M. Kane, Federal Practice and Procedure § 2700, p. 538 (1983)). As such, "the most common type of prejudice is the additional expense caused by the delay, the hearing on the Rule 55(c) motion, and the introduction of new issues." *Id. See also Leadership Studies, Inc. v. Readytomanage, Inc.*, No. 2:15-cv-09459, 2016 WL 4425713, at *8 (C.D. Cal. Aug. 16, 2026) (setting aside default on the condition "that defendants compensate plaintiff for the attorneys' fees associated with both defendants' motion to set the Clerk's entry of default aside, as well as plaintiff's motion for default judgment."). Notably, courts have imposed such conditions on defendants even when their conduct is not culpable. *See Kajitani v. Downey Savings & Loan Ass'n*, No. 07-cv-00398,

2007 WL 3129342, at *7 (D. Haw. Oct. 25, 2007) (ordering that defendant pay plaintiffs for the reasonable attorneys' fees associated with the default, despite the fact that the court set the default aside after finding defendant's conduct not to be "culpable").

Ignoring Plaintiffs' prejudice in incurring substantial, additional fees, Defendant argues Plaintiffs would not be prejudiced because they "delayed prosecuting this matter." Dkt. No. 55 at 8–9. Plaintiffs have already explained any delay. *See* Dkt. No. 31. Additionally, the case Defendant cites discusses prejudice in the context of setting aside default, *not* in the context of whether to impose a condition on setting aside default. *See* Dkt. No. 55 at 9 (citing *TCI Grp. Life Ins. Plan v. Knebber*, 244 F.3d 691, 697 (9th Cir. 2001)). In the context of whether to impose a condition on setting default, the most common type of prejudice is additional expense, expenses that courts regularly award in similar situations. This is the specific prejudice that Plaintiffs claim here.

Defendant also advances two additional theories for why the Court should not impose sanctions: (1) Plaintiffs' claims are "meritless"; and (2) he was not culpable. Dkt. No. 55 at 8–9. Both arguments are unconvincing.

First, Defendant describes this case as "meritless" and an attack on his First Amendment rights. As an initial matter, this Court *already* found that Plaintiffs' case has merit. Specifically, on default judgment, the Court found: "The motion satisfies the factors set forth in *Eitel v. McCool*, 782 F.2d 1470, 1471-72 (9th Cir. 1986)." Dkt. No. 40 at 1. The second factor of the *Eitel* test requires courts to analyze "the merits of plaintiff's substantive claim." *Eitel*, 782 F.2d at 1471. Accordingly, by finding that Plaintiffs' motion satisfied the *Eitel* factors, it implicitly found that Plaintiffs' case has merit.

Regardless, even if Plaintiffs' case was without merit, that does not mitigate the fact that Defendant willfully ignored this litigation for years, frequently posting about it and even fundraising off of it. If Defendant truly wanted to challenge the merits of this litigation, he had ample time to do so. As such, this does not—and cannot—provide a basis to deny sanctions as a condition to setting aside default.

Second, Defendant argues his conduct was not culpable. As an initial matter, as discussed, sanctions may be appropriate even when a defendant's conduct is not culpable. Regardless, Defendant's conduct is the definition of culpability. Plaintiffs brought this case on June 5, 2023. The very next day, on June 6, 2023, Defendant took to social media, seemingly excited that Director Patel is suing him. *See*

Dkt. No. 30 at 25, 26. Despite this, Defendant dodged service for months, requiring Plaintiffs to file a motion on September 28, 2023, to extend the time to complete service. Dkt. No. 17. On October 30, 2023, Plaintiffs completed service on Defendant. Dkt. No. 19. Still, Defendant never responded to this case, despite posting about the case numerous times on social media and even fundraising off of it.

Defendant now tries to argue that he is not culpable because he contests service and is not a "sophisticated" party. Dkt No. 55 at 8. The Court already found that Defendant "has not met his burden to show strong and convincing evidence that he was not served as a result of the plaintiffs' substantial compliance with Rule 4 and his actual notice of the suit." Dkt. No. 53 at 5. Accordingly, what Defendant is actually asking the Court to do is reconsider its prior findings. Such an ask is improper. Defendant was served with this litigation, knew the ongoings of the litigation, and even fundraised off the litigation. He only began to take the litigation seriously once the Court entered a judgment against him. That is precisely culpable conduct. *See Direct Mail Specialists, Inc. v. Eclat Computerized Technologies, Inc.*, 840 F.2d 685, 690 (9th Cir. 1988) ("If a defendant 'has received actual or constructive notice of the filing of the action and failed to answer' his conduct is culpable." (quoting *Meadows v. Dominican Republic*, 817 F.2d 517, 521 (9th Cir. 1987)).

Accordingly, if the Court is inclined to set aside the default judgment, conditioning that decision on the payment of Plaintiffs' additional expenses is more than reasonable. Importantly, "even if a court does not have jurisdiction over an underlying action, it may have jurisdiction to determine whether the parties have abused the judicial system and whether sanctions are appropriate to remedy such abuse." *Westlake North Property Owners Ass'n v. Thousand Oaks*, 915 F.2d 1301, 1303 (9th Cir. 1990).

**CONCLUSION**

Defendant knowingly ignored this litigation for years while publicly discussing and exploiting it online. Ninth Circuit precedent places the burden squarely on him to establish entitlement to Rule 60(b)(4) relief. He cannot meet that burden because the record establishes that he purposefully directed defamatory conduct toward Nevada. His arguments to the contrary are unpersuasive. Accordingly, Plaintiffs respectfully request that the Court deny Defendant's motion to set aside default judgment for lack of personal jurisdiction. Alternatively, if the Court vacates the judgment, Plaintiffs request that the

Court condition relief upon payment of Plaintiffs' reasonable attorney's fees incurred after entry of default judgment.

DATED: May 18, 2026                                    Respectfully submitted,

*/s/ Jared J. Roberts*
Jason C. Greaves *(pro hac vice)*
Jared J. Roberts *(pro hac* vice)
BINNALL LAW GROUP, PLLC
717 King Street, Suite 200
Alexandria, Virginia 22314
Phone: (703) 888-1943
Fax: (703) 888-1930
jason@binnall.com
jared@binnall.com

Adam R. Fulton
(Nev. Bar No. 11572)
JENNINGS & FULTON, LTD.
2580 Sorrel Street
Las Vegas, Nevada 89146
Phone: (702) 979-3565
Fax: (702) 362-2060
afulton@jfnvlaw.com

*Counsel for Plaintiffs*

- 7 -