**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| KASHYAP PATEL and the KASH FOUNDATION, INC., <br><br> Plaintiffs <br><br> v. <br><br> JIM STEWARTSON, <br><br> Defendant | Case No.: 2:23-cv-00873-APG-NJK <br><br> **Order Granting Defendant's Motions to (1) Set Aside Default Judgment and (2) Dismiss** <br><br> [ECF Nos. 42, 43] |

Kashyap Patel and the Kash Foundation, Inc. sued Jim Stewartson for allegedly defamatory statements he made on Twitter (now "X") and Substack between June 2021 and May 2023. They brought claims for (1) defamation, (2) injurious falsehood, and (3) business disparagement arising from Stewartson's posts that Patel "attempted to overthrow the government," "planned 1/6," is "guilty of sedition," is a "Kremlin asset," and that he and his foundation paid people to "lie to congress." ECF No. 8 at 7-16. Stewartson did not defend against the suit despite having actual knowledge of it, and I entered default judgment against him. ECF Nos. 40; 41; 50-1 at 4, 6, 8, 10. Stewartson now moves to set aside the default judgment under Federal Rule of Civil Procedure 60(b)(1) and (b)(4) and to dismiss the case for lack of personal jurisdiction under Rule 12(b)(2). ECF Nos. 42; 43. I ordered supplemental briefing on (1) which party has the burden on the personal jurisdiction issue in the context of a Rule 60(b)(4) motion to set aside, (2) whether there were minimum contacts to support personal jurisdiction, and (3) what penalty, if any, Stewartson should suffer if I set aside the judgment. ECF No. 53.

I grant Stewartson's motions because he did not have minimum contacts with Nevada sufficient to establish personal jurisdiction. Therefore, I set aside the default judgment against him as void under Rule 60(b)(4). And because I do not have personal jurisdiction over Stewartson, I grant his motion to dismiss.

## I.    MOTION TO SET ASIDE THE DEFAULT JUDGMENT

Stewartson requests that I set aside the default judgment as void for lack of jurisdiction under Rule 60(b)(4).[1] He argues this court does not have personal jurisdiction over him because he does not have sufficient contacts with Nevada.[2]

Rule 60(b) authorizes district courts to relieve parties from default judgments for several reasons. Rule 60(b)(4) authorizes me to set aside a judgment if it is void. However, "[a] judgment is not void, for example, simply because it is or may have been erroneous." *United Student Aid Funds Inc. v. Espinosa*, 559 U.S. 260, 270 (2010) (simplified). "Similarly, a motion under Rule 60(b)(4) is not a substitute for an appeal" and may only be granted "in the rare instance where a judgment is premised either on a certain type of jurisdictional error or on a violation of due process that deprives a party of notice or the opportunity to be heard." *Id.* at 270-71. "But the scope of what constitutes a void judgment is narrowly circumscribed, and judgments are deemed void only where the assertion of jurisdiction is truly unsupported." *Hoffmann v. Pulido*, 928 F.3d 1147, 1151 (9th Cir. 2019). In other words, "a judgment is void because of a jurisdictional defect generally . . . only for the exceptional case in which the court

---

[1] Because I agree with Stewartson's argument under Rule 60(b)(4), I do not address his argument under Rule 60(b)(1).

[2] Stewartson "remains free to challenge personal jurisdiction after a default has been entered," until he "affirmatively waives his objection." *Am. Ass'n of Naturopathic Physicians v. Hayhurst*, 227 F.3d 1104, 1107 (9th Cir. 2000). Stewartson raised his personal jurisdiction argument in his first appearance and therefore did not waive the issue.

that rendered judgment lacked even an 'arguable basis' for jurisdiction." *United Student Aid Funds Inc.*, 559 U.S. at 271 (quotation omitted).

A Rule 60(b) analysis usually examines the factors from *Falk v. Allen*, namely, "(1) whether the plaintiff will be prejudiced, (2) whether the defendant has a meritorious defense, and (3) whether culpable conduct of the defendant led to the default." 739 F.2d 461, 463 (9th Cir. 1984). However, I do not apply these rules in the context of Rule 60(b)(4) motions because those motions "differ[] markedly" from ones brought "under other clauses of Rule 60(b)." *Thomas P. Gonzalez Corp. v. Consejo Nacional De Produccion De Costa Rica*, 614 F.2d 1247, 1256 (9th Cir. 1980) (quotation omitted), *overruled on other grounds by CC/Devas (Mauritius) Ltd. v. Antrix Corp.*, 605 U.S. 223, 235 (2025). When determining whether a judgment is void, I do not have my "normal discretion to grant or deny the motion and, therefore, consideration of the merits of the defense, prejudice, or culpability [is] not proper." *S.E.C. v. Internet Sols. for Bus. Inc.*, 509 F.3d 1161, 1165 (9th Cir. 2007); *see also MetroPCS v. A2Z Connection, LLC*, No. 2:15-cv-01412-JAD-CWH, 2018 WL 3785384, at *5 (D. Nev. Aug. 9, 2018).

**A. Regardless of which party bears the burden to prove minimum contacts to establish specific jurisdiction, Stewartson did not have minimum contacts.**

"When no federal statute governs personal jurisdiction, the district court applies the law of the forum state." *Boschetto v. Hansing*, 539 F.3d 1011, 1015 (9th Cir. 2008). Nevada's longarm statute is co-extensive with federal standards, so I may exercise personal jurisdiction if doing so comports with federal constitutional due process. Nev. Rev. Stat. § 14.065(1); *Walden v. Fiore*, 571 U.S. 277, 283 (2014).

"There are two forms of personal jurisdiction that a forum state may exercise over a nonresident defendant—general jurisdiction and specific jurisdiction." *Boschetto*, 539 F.3d at

1016. The plaintiffs do not argue that I have general jurisdiction over Stewartson. Specific jurisdiction principally depends on an "activity or an occurrence that takes place in the forum State and is therefore subject to the State's regulation." *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011). "For a court to exercise personal jurisdiction over a nonresident defendant, that defendant must have at least minimum contacts with the relevant forum such that the exercise of jurisdiction does not offend traditional notions of fair play and substantial justice." *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 801 (9th Cir. 2004) (quotation omitted). I apply a three-prong test to determine whether specific jurisdiction exists: (1) the defendant "must have performed some act or consummated some transaction with the forum by which it purposefully availed itself of the privilege of conducting business" in the forum state; (2) the plaintiff's claims "must arise out of or result from [those] forum-related activities; and (3) the exercise of jurisdiction must be reasonable." *Rio Props., Inc. v. Rio Int'l Interlink*, 284 F.3d 1007, 1019 (9th Cir. 2002).

Generally, the plaintiff bears the burden to establish personal jurisdiction. *CollegeSource, Inc. v. AcademyOne, Inc.*, 653 F.3d 1066, 1073 (9th Cir. 2011). When the motion is based on written materials, "the plaintiff need only make a prima facie showing of jurisdictional facts." *Dole Food Co., Inc. v. Watts*, 303 F.3d 1104, 1108 (9th Cir. 2002) (quotation omitted). However, as I explained in my last order, it is not clear which party bears the burden of making a prima facie showing in the context of a Rule 60(b)(4) motion to set aside the judgment where the defendant had actual notice of the suit before default judgment was entered. Each party argues that the other should bear the burden. But having received the benefit of the parties' additional briefs, I conclude that, regardless of who bears the burden of proof, Stewartson did not have minimum contacts sufficient to establish personal jurisdiction.

4

*1.   Stewartson did not purposefully avail himself of conducting activities in Nevada.*

"Purposeful availment requires that the defendant engage in some form of affirmative conduct allowing or promoting the transaction of business within the forum state." *Doe v. Am. Nat'l. Red Cross*, 112 F.3d 1048, 1051 (9th Cir. 1997) (quotation omitted).  "Due process requires that a defendant be haled into court in a forum State based on his own affiliation with the State, not based on the 'random, fortuitous, or attenuated' contacts he makes by interacting with other persons affiliated with the State." *Walden*, 571 U.S. at 286 (quoting *Burger King v. Rudzewicz*, 471 U.S. 462, 475 (1985)).

To determine purposeful availment in the context of alleged tortious internet conduct, courts "inquire whether a defendant purposefully direct[ed] his activities at the forum state," applying the "effects" test from *Calder v. Jones*, 465 U.S. 783, 789-90 (1984). *Mavrix Photo, Inc. v. Brand Techs., Inc.*, 647 F.3d 1218, 1228 (9th Cir. 2011) (simplified).  This test concludes the defendant purposefully directed his activities at the forum if he: "(1) committed an intentional act, (2) expressly aimed at the forum state, (3) causing harm that the defendant knows is likely to be suffered in the forum state." *Picot v. Weston*, 780 F.3d 1206, 1214 (9th Cir. 2015) (simplified).  Here, the second prong is the primary dispute.

As to the first prong of the *Calder* effects test, there is no question that Stewartson's alleged acts were intentional.  Posting on a website constitutes an intentional act. *See Mavrix Photo, Inc.*, 647 F.3d at 1229.  As to the third prong, the plaintiffs allege, and Stewartson does not dispute, that he directed defamatory statements at Nevada residents and intended them to feel the effects of his statements in Nevada.  But intending the plaintiffs to be harmed in the forum state is not sufficient to establish personal jurisdiction. *Walden*, 571 U.S. at 290 ("[A]n injury is jurisdictionally relevant only insofar as it shows that the defendant has formed a contact with the

forum State."); *see also Transparent Bus. Inc. v. Infobae,* No. 3:20-cv-00582-MMD-WGC, 2021 WL 2670704, at *3 (D. Nev. June 29, 2021) ("Defendant's awareness that Plaintiffs were Nevada citizens or that they would suffer harm in Nevada is what *Walden* would find to be Defendant's contacts with Plaintiffs and not with the forum state itself.").

As to the second prong of the *Calder* effects test, Stewartson did not expressly aim his conduct at Nevada. Although Stewartson posted on websites accessible in Nevada, "something more" is required to constitute express aiming at a forum state. *Cybersell, Inc. v. Cybersell, Inc.*, 130 F.3d 414, 418 (9th Cir. 1997). In assessing "something more," the Ninth Circuit has examined "several factors, including the interactivity of the website . . .; the geographic scope of defendant's commercial ambitions . . .; and whether the defendant individually targeted a plaintiff known to be a forum resident." *Mavrix Photo*, 647 F.3d at 1229 (quotation omitted).

If Stewartson bears the burden to show this prong, he made a prima facie showing that he did not direct his activities at Nevada. Stewartson posted on a generally accessible website from California, and he said he "did not care about [the plaintiffs'] alleged connections to Nevada[] but intended to communicate about Mr. Patel's conduct on the national and international stage." ECF No. 55-1 at 2-3. Stewartson has not been in Nevada since attending a UFC event in 2016 and has "no [other] connection to Nevada." *Id.* at 2; ECF No. 43-1 at 2. He thus has made a prima facie case that he did not purposefully direct his activities at Nevada.

If the plaintiffs bear the burden to show this prong, they fail. The plaintiffs argue that Stewartson "has maintained a personal crusade" against anyone involved in the Nevada 2020 presidential election, including Patel and Mike Flynn, and that he thus targeted Patel as a Nevadan and directed content about him towards Nevadans. ECF No. 50 at 10-11. They point to Stewartson's post about Flynn's counsel, Jesse Binnall, flipping "fake electors in Nevada" to

"trade for immunity" and Stewartson's post about Patel working for Flynn. ECF Nos. 8 at 14; 50-1 at 16.  The plaintiffs also argue that Stewartson has contacts with Nevada because he criticized Caesars Palace for initially agreeing to host a conservative convention regarding election fraud and because he seemingly anticipated a trial for this case in Nevada.[3] ECF No. 50-1 at 12.  Stewartson's criticism of a Nevadan business and people involved in the Nevada 2020 presidential election are "random, fortuitous, or attenuated" contacts with people affiliated with the state and do not establish a connection between Stewartson and Nevada itself. *Walden*, 571 U.S. at 286.  Even if these contacts were not random or fortuitous, as discussed below, the plaintiffs' claims here do not arise out of or relate to the Caesars Palace or election fraud posts, so they cannot support the exercise of personal jurisdiction under the second prong of the specific personal jurisdiction test.

The plaintiffs' allegations arise out of Stewartson's allegedly defamatory posts on X and Substack, which are about the plaintiffs, who are Nevadan residents.  They allege that Stewartson's X followers include Nevada residents and that he tagged Patel, a Nevadan resident, but they do not allege that Stewartson interacted with or tagged his Nevadan followers in relation to the allegedly defamatory posts. ECF No. 8 at 19.  Tagging Patel, who happens to be a Nevadan resident, in posts that have nothing to do with Nevada activities or entities does not target a Nevadan audience, and therefore does not create a contact between Stewartson and

---

[3] The plaintiffs allege that Stewartson wrote a post on X which stated, "Googly-eyed Kremlin bitch @FBIDirectorKash will have to come back to Nevada for the trial where I explain in full detail to the judge why I was dead serious when I said he's a 'chud.'" ECF No. 50 at 12. Stewartson explains that he made this post after I had entered default judgment and that it therefore indicated his intent to fight the default judgment, not litigate the trial on its merits. ECF No. 57 at 6-7.  Regardless, Stewartson anticipating the possibility of a trial in Nevada does not create a connection between Stewartson and Nevada and does not constitute consent to jurisdiction in Nevada.  Moreover, the plaintiffs' claims do not arise out of or relate to this post.

Nevada.  Rather, it creates a contact with Patel himself and "the plaintiff cannot be the only link between the defendant and the forum." *Walden*, 571 U.S. at 285.

The plaintiffs also allege that Stewartson "funnels his [X] followers to his Substack and podcast, where he solicits paid subscriptions and makes money off of his lies about [the plaintiffs]." ECF No. 8 at 19.  However, they do not allege that even one Nevadan has subscribed to Stewartson's Substack or podcast, or that Stewartson targeted advertisements at Nevadans in particular. *Cf. Mavrix Photo, Inc.*, 647 F.3d at 1230 (finding the defendant expressly aimed its website at a state where advertisements were "directed to Californians" and had content "with a specific focus on the California-centered celebrity and entertainment industries.").  Further, an advertisement for paid subscriptions alone is not "sufficient to subject the advertiser to jurisdiction in the plaintiff's home state." *Cybersell, Inc.*, 130 F.3d at 418; *see also Medinah Mining, Inc. v. Amunategui*, 237 F. Supp. 2d 1132, 1135 (D. Nev. 2002) (holding that a commercial purpose accompanying a web post is insufficient to constitute "something more" required by *Cybersell*.).  Additionally, the geographic scope of Stewartson's posts was not targeted at Nevada.  His statements were aimed at the American body politic writ large, which includes Nevada, but the plaintiffs do not allege facts showing that he directed his allegedly defamatory posts to a Nevadan audience in particular, so he did not aim at Nevada.

The plaintiffs attempt to analogize to *Calder*, where a defamatory article was expressly aimed at the forum state of California because it relied on California sources, "concerned the California activities of a California resident," California was "the focal point both of the story and the harm suffered," and "the brunt of the harm . . . was suffered in California." 465 U.S. at 788-89.  Unlike in *Calder*, Stewartson's allegedly defamatory statements were not about activities that Patel had allegedly undertaken while in Nevada, the plaintiffs do not allege that he

contacted anyone who lived in Nevada about Patel's alleged conduct, and while the plaintiffs do allege that they were harmed in Nevada, they do not allege significant harm there in particular.[4] The plaintiffs' reliance on *Burri Law P.A. v. Skurla*, 35 F.4th 1207 (9th Cir. 2022), fails for the same reason.  The defamatory communications in that case "were sent to Arizona, circulated within Arizona, and had an Arizona 'focus' as they concerned [the plaintiff's] activities in Arizona." *Id.* at 1214-15.  Further, the communications were "intended to interfere with an Arizona lawsuit and an Arizona contract." *Id.* at 1215.  In contrast, Stewartson did not accuse Patel of conducting any of his activities in Nevada, nor did he purposefully target a Nevada audience when he posted about them, despite tagging Patel himself, who happened to be a Nevada resident.  Simply, Nevada was not the "focal point" of Stewartson's allegedly defamatory posts.

> 2. *The plaintiffs' claims against Stewartson do not arise out of or relate to his posts about Caesars Palace and the Nevada 2020 presidential election.*

Even if the plaintiffs could show that Stewartson purposefully availed himself of the privilege of conducting activities in Nevada by posting about Nevada election fraud and a convention at Caesars Palace to Nevada followers, their claims against Stewartson do not arise out of or relate to those activities.  Claims "arise out of" a defendant's contacts with the forum state when, "but for" those contacts, the plaintiffs would not have been injured. *Panavision*

---

[4] The plaintiffs did not argue that their expert witness on damages showed jurisdictionally significant harm in Nevada.  But even if I considered the expert's opinion, the result would not change.  The plaintiffs' expert opined that "[d]amage was caused to the plaintiffs' local, national and international reputation" and that "[d]amage was caused to the plaintiffs' reputation, specifically in the United States." ECF No. 34 at 57.  The expert did not opine that a jurisdictionally significant amount of damage had or would occur in Nevada. *See Yahoo! Inc. v. La Ligue Contre Le Racisme Et L'Antisemitisme*, 433 F.3d 1199, 1207 (9th Cir. 2006) (en banc) ("If a jurisdictionally sufficient amount of harm is suffered in the forum state, it does not matter that even more harm might have been suffered in another state.").

9

*Intern., L.P., v. Toeppen*, 141 F.3d 1316, 1322 (9th Cir. 1998).  The plaintiffs do not plausibly allege that there is a connection between criticism of Caesars Palace and allegedly defamatory statements against themselves, nor do they show that "but for" Stewartson's post about fake electors in Nevada in the 2020 presidential election, he would not have also tweeted the allegedly defamatory statements about Patel.  Stewartson did not invoke Patel's name or tag him in any post related to Nevada politics or events, nor did he reference Nevada politics or events in his allegedly defamatory statements against Patel.  Stewartson's allegedly defamatory statements regarding the plaintiffs are not specific to a particular location, and he could have made the same statements even if he had never posted about Caesars Palace or people involved in the Nevada 2020 presidential election.[5]  Consequently, these contacts do not assist the plaintiffs in showing that Stewartson is subject to specific personal jurisdiction in this case.

Overall, regardless of which party bears the burden to prove minimum contacts, Stewartson did not have minimum contacts in Nevada.  And even if he had, the plaintiffs' claims against him did not arise out of or relate to those contacts.  As a result, I need not address the remaining elements of the specific personal jurisdiction analysis.  There is no arguable basis for this court to exercise specific personal jurisdiction over Stewartson.  Thus the default judgment is void and I set it aside under Rule 60(b)(4).

---

[5] *See Hutchison v. Ethical Cap. Partners*, No. 2:24-cv-00673-GMN-BNW, 2024 WL 4651079, at *4-5 (D. Nev. Oct. 31, 2024) (holding that the defendants' defamatory statements regarded events that took place outside the forum state, or were "not specific to a particular location," so the forum state was not the "focal point" of the activity and the harm suffered); *Transparent Bus.*, 2021 WL 2670704, at *4 ("Plaintiffs' injuries could have been experienced anywhere because [the defendant's website is] accessible worldwide and not just in Nevada.").

10

**B.  I do not have discretion to award attorney's fees and costs.**

Generally, I have wide discretion to condition the vacating of a default judgment upon the defendant's payment of the plaintiff's attorney's fees and costs. *See Nilsson, Robbins, Dalgarn, Berliner, Carson & Wurst v. La. Hydrolec*, 854 F.2d 1538, 1546-47 (9th Cir. 1988). However, although the parties did not address this in their supplemental briefing, it is not apparent to me that I have this discretion in the context of a motion to set aside a default judgment under Rule 60(b)(4). *See Internet Sols.*, 509 F.3d at 1165 (holding the court does not have "normal discretion to grant or deny the motion . . ."). "Either a judgment is void or it is valid," and if it is void under Rule 60(b)(4), I have "a nondiscretionary duty to grant relief from the default judgment." *Thomas P. Gonzalez*, 614 F.2d at 1256 (quotation omitted). Therefore, it is not clear that I may condition setting aside a void judgment on the defendant's payment of attorney's fees. *See Mortg. Elec. Registration Sys., Inc. v. Patock*, Civil No. 2006-190, 2009 WL 1421295, at *6 (D.V.I. May 20, 2009) (refusing to condition a set aside on payment of fees or posting a bond because the judgment "must be vacated as void *ab initio* because it was entered against a defendant who had not been properly served.").

If I did have discretion to condition setting aside the default judgment on payment of attorney's fees, I would do so here.  Stewartson knew of the suit and may have attempted to avoid service, as shown through multiple service attempts at his address. ECF Nos. 14; 19. Further, he mocked the plaintiffs online for filing the suit, and seems to have relied on his own

poor judgment about what would legally constitute service. ECF No. 50-1 at 4, 6, 8, 10.  He has wasted the plaintiffs' and the court's time, and I do not commend his actions.

## II.      MOTION TO DISMISS

In addition to moving to set aside the default judgment, Stewartson moves to dismiss all claims for lack of personal jurisdiction under Rule 12(b)(2).  As discussed above, I do not have personal jurisdiction over Stewartson, so I grant his motion to dismiss.

## III.     CONCLUSION

I THEREFORE ORDER that defendant Jim Stewartson's motion to set aside the default judgment **(ECF No. 43) is GRANTED.**  The default judgment **(ECF No. 41) is VACATED.**

I FURTHER ORDER that defendant Jim Stewartson's motion to dismiss **(ECF No. 42) is GRANTED.**  This case remains closed.

DATED this 25th day of July, 2026.

_____
ANDREW P. GORDON
CHIEF UNITED STATES DISTRICT JUDGE

12